## Inland Steel Company *v.* Gillespie.

[No. 22,175. Filed February 17, 1914. Rehearing denied May 15, 1914.]

1. Master and Servant.—*Injuries to Servant.—Complaint.—Sufficiency.*—A complaint, by a crane operator against his employer for personal injuries, alleging that certain gears, pinions and bearings in the mechanism had become so worn and out of repair as to cause the flanges of the wheels of the crane to bind on and climb the rails over which the crane was operated, and thus cause it to run unevenly and lurch from side to side, and that plaintiff noticed such tendency a few days before the injury, called it to the attention of the crane foreman, and was promised repairs, and continued to work, relying on such promise, and while performing one of the duties of his employment, by reason of the lurching of the crane, he was thrown sidewise from his seat and his arm was caught between the end of the crane and a column and was crushed, was sufficient to apprise defendant of what it would be required to meet, and to show a causal connection between the negligence complained of and plaintiff's injury. p. 638.

2. Master and Servant.—*Injuries to Servant.—Assumed Risk.*—Where an employe notifies the employer of defects in the tools or machinery he is required to use, and the employer recognizes such defects and induces the employe to continue the work by a promise to repair, the employer assumes the extraordinary risk pending the fulfilment of the promise, whether the defect is latent or obvious. p. 638.

3. Master and Servant.—*Injuries to Servant.—Defective Machinery.—Assumed Risk.—Contributory Negligence.—Complaint.*—A complaint, by an operator of a traveling crane against his employer for personal injuries, alleging specific defects in the crane and that plaintiff had notified the foreman of such defects, that the latter requested plaintiff to continue work until the parts

could be replaced, informing him that there was no great danger, and that plaintiff, relying on such representations, continued to use the crane until injured as a result of such defects, and that the danger from the defects was not so threatening that a reasonably prudent man would not have encountered it under the assurance and promise made to plaintiff, was not open to the objection that it showed that plaintiff assumed the risk or that he was guilty of contributory negligence.  p. 639.

4. MASTER AND SERVANT.—*Injuries to Servant.—Answers to Interrogatories.—Complaint.*—In a crane operator's action for injuries sustained in being thrown by the uneven and lurching movement of the crane, answers by the jury to interrogatories showing that defendant's foreman, on inspecting the crane at plaintiff's request, found a defective gear wheel and stated as his opinion such wheel caused the lurching, that he promised to procure a new gear wheel as soon as he could get one cast and cut out, that such was the only promise made, and that plaintiff was induced to remain at work by reason of such promise, are not in conflict with the allegations of the complaint that the uneven and jerking movement was caused by the cogs on the pinion . and on the cogwheel, and the boxing and bearings being worn and out of repair, and that defendant's foreman, having superior knowledge in the premises, assured plaintiff that there was no danger, and promised to repair the defective and worn condition of the cogs, pinions, boxings and bearings within a reasonable time.  p. 639.

5. MASTER AND SERVANT.—*Injuries to Servant.—Answers to Interrogatories.—Complaint.*—Answers by the jury to interrogatories showing that defendant's crane foreman promised to replace a defective gear wheel, connected with the crane on which plaintiff was employed, "as soon as he got time to get one cast and cut out," was not in conflict with an allegation of the complaint that he promised to repair within a reasonable time.  p. 640.

6. MASTER AND SERVANT.—*Injuries to Servant.—Defective Machinery.—Promise to Repair.*—Neither the promise, as shown by the jury's answers to interrogatories, to replace a warped gear wheel in a crane which plaintiff was operating as soon as one could be cast and cut out, nor, as alleged in the complaint, to make the repairs within a reasonable time, was conditional, and the plaintiff, in the absence of contributory negligence, had the right to rely on same and to recover if injured by reason of the defect within the period covered by the promise, the duration of which was for the jury to determine.  p. 640.

7. MASTER AND SERVANT.—*Injuries to Servant.—Defective Machinery.—Evidence.*—In an action by the operator of a traveling crane for injuries alleged to have been sustained by reason of defects therein which caused the crane to lurch and throw plaintiff,

Inland Steel Co. *v.* Gillespie—181 Ind. 633.

where there was evidence from which the jury was justified in finding that the defects in the crane which were charged and proven would cause said crane to lurch, and that plaintiff was thrown to his injury by reason of a lurch, it cannot be said, in the absence of proof that the lurch resulted from any other known cause, that the jury was unwarranted in finding that the defects charged produced the lurch which resulted in plaintiff's injury.   p. 641.

8. MASTER AND SERVANT.—*Injuries to Servant.—Defective Machinery.—Jury Question.*—In an action by the operator of a traveling crane for injuries resulting from a defect in the crane which caused it to lurch, evidence showing that the weight of the crane caused the truck wheel to drop back onto the rail more suddenly and with a greater jar than would be true of a lighter machine, that plaintiff's work of sanding the rails over which the crane was operated required him to be in either a kneeling or leaning position at the extreme end of the machine, and that while such position was comparatively safe under ordinary conditions, the unusual movement of the crane caused plaintiff to suddenly lose his balance and fall,' does not disclose that it was physically impossible that the defects alleged could have produced the injury, and the question was properly for the jury. p. 642.

9. TRIAL.—*Instructions.—"Preponderance of the Evidence."*—An instruction that by preponderance of the evidence is meant that which, after a consideration of all the evidence, in the judgment of the jurors is entitled to the greatest weight, that it means such as, when weighed with that which is offered to oppose it, has more convincing power in the minds of the jurors, that it does not mean that the greater number of witnesses shall be produced on the one side or on the other, but that on the whole evidence the jury believes the greater probability of the truth to be upon the side of the party having the affirmative of the issue, is not open to the objection that it singles out some particular evidence that has been most striking to the mind.   p. 643.

10. APPEAL.— *Review.— Harmless Error.— Instructions.*— An instruction in a personal injury case, that in assessing the amount of the damages the jury may take into consideration every particular and phase of the injury, is erroneous, but the error is harmless where there was no improper evidence admitted, or where, if such evidence was admitted, no proper steps were taken to present any question as to such evidence.   p. 643.

11. TRIAL.—*Examination of Jurors.—Conduct of Counsel.—Reference to Liability Insurance.*—Where defendant, in an action for personal injuries, is insured against such accidents, and the action is being defended by an attorney employed by the insur-

ance company, the plaintiff's attorney, for the purpose of an intelligent exercise of his challenges, may ask the jurors if they are stockholders, officers or agents, or in anywise connected with such insurance company, but he may not state that such company is making the defense. p. 645.

12. APPEAL.—*Review.*—*Refusal of Instruction.*—Where, in a personal injury case, plaintiff's attorney had examined the jurors on their *voir dire* as to any connection with a liability insurance company, which he stated was making the defense, the refusal of the court to instruct the jury not to consider the fact of insurance, must be deemed reversible error in the absence of a clear showing that appellant was not harmed thereby. p. 649.

From Lake Superior Court; *Virgil S. Reiter,* Judge.

Action by William Gillespie against the Inland Steel Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*William J. Whinery,* for appellant.

*Peter Crumpacker, Fred Crumpacker* and *C. B. Tinkham,* for appellee.

SPENCER, J.—Action by appellee to recover damages for personal injuries alleged to have been sustained while in the employ of appellant and by reason of appellant's negligence. The case was tried by a jury which returned a verdict for appellee, together with answers to interrogatories, and assessed the damages at $12,000. Appellant's motions for judgment on the answers to interrogatories and for a new trial were overruled, and from a judgment rendered on the general verdict, this appeal is prosecuted.

The first assignment of error challenges the trial court's action in overruling appellant's demurrer to the amended complaint. This pleading is in one paragraph and charges, in substance, that on December 8, 1908, appellant was a corporation engaged in the manufacture of steel; that on said date appellee was in the employ of appellant as a traveling crane operator and was engaged in operating a certain crane in appellant's plant known as a 100-ton crane. The mechanism and method of operation of this crane are de-

scribed in detail and it is then alleged that certain gears, pinions and bearings in said mechanism had become so worn and out of repair as to cause the flanges of the wheels of said crane to bind on and climb the rails over which said crane was operated and thus cause said crane to run unevenly and to lurch from side to side; that said lurching and uneven movement did not occur regularly but at varying intervals; that appellee noticed this tendency a few days before the injury herein complained of and notified appellant, through its general foreman of cranes, of said condition; that appellee was afraid to operate said crane in its said defective condition and asked to be transferred to another crane but was informed by appellant's said foreman, who had superior knowledge in the premises, that there was no great danger in operating said crane in its said condition and that the defective parts would be repaired or replaced within a reasonable time; that said foreman requested appellee to continue at work and to continue in the operation of said crane at said time; that said promise and request were made in behalf of appellant and for the purpose of avoiding an immediate suspension of the work being done by said crane, and for the purpose of inducing appellee to continue at his said work; that appellee relied on said promise to repair said crane and continued to operate the same up to the time of his injury; that the danger incident to the operation of said crane in its said defective condition did not appear to be and was not so threatening and impending that a reasonably prudent man would not have encountered it under said assurance and promise; that on the date above mentioned appellee, while performing one of the duties of his employment, and by reason of the sudden lurching of said crane, was thrown sidewise from his seat thereon and his right arm was caught between the end of said crane and a steel upright column in appellant's plant; that because of such accident appellee lost his right arm and received other severe injuries. To this complaint appellant urges

three objections: (1) that many of the material statements are merely recital and inference, and do not appear as dire~t and positive averments of fact; (2) that no causal connection is shown between the alleged negligence of appellant and the injury complained of; and (3) there is no showing that appellee, with his knowledge of the defective condition of the crane, did not assume the risk incident thereto. We deem it unnecessary to set out herein more than an outline of this pleading, which is quite lengthy and filled with matters of detail, but in disposing of the first and second objections above stated, it is sufficient to say that, fairly construed, the complaint was sufficient to apprise appellant of what it would be required to meet and to show a causal connection between the negligence complained of and appellee's injury. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99; *Shirley Hill Coal Co.* v. *Moore* (1914), 181 Ind. 513, 103 N. E. 802.

In support of its third objection, appellant insists ''that the exception to the rule that the servant assumes the hazards incident to such defects as he has knowledge of does not prevail, even where the master agrees to make timely repairs, if the servant, while continuing in the use of the defective appliance, has plainly before his view the yet unrepaired defects. In other words, that the exception prevails where the defect, which is promised to be repaired, is latent, and does not prevail where such defect is patent'', quoting from the case of *Burns* v. *Windfall Mfg. Co.* (1896), 146 Ind. 261, 263, 45 N. E. 188. In the later case of *McFarlan Carriage Co.* v. *Potter* (1899), 153 Ind. 107, 53 N. E. 465, however, this court held that where an employe has notified his employer of defects in the tools or machinery which he is required to use and the employer recognizes such defects but, in order to avoid an immediate suspension of the work, induces the employe to continue the work by a promise to repair, the employer is charged with

an assumption of the extraordinary risk pending the fulfillment of the promise to repair, whether the defect is latent or obvious. This language is used in that opinion, at page 116: "Some expressions in *Burns* v. *Windfall Mfg. Co.* [1896], 146 Ind. 261, [45 N. E. 188], and probably other of our cases may appear in conflict, but we are satisfied that the better reasons and a decided weight of authority support the law as above stated." In the case at bar, the 3. averments of the complaint do not show that appellee assumed the risk arising out of the defects described nor that he was guilty of contributory negligence. The demurrer was properly overruled.

Appellant's second assignment is that the court erred in overruling the motion for judgment on the answers to interrogatories. Under this assignment it is urged that 4. such answers show: (1) a defective condition in appellant's crane distinctly different from that charged in the complaint, and (2) that the alleged promise to repair was conditional and therefore not sufficient to avoid the assumption of risk by appellee. In support of these propositions, our attention is called to certain answers which show that at the time Mr. Matheny, appellant's foreman of cranes, made an inspection of the 100-ton crane at appellee's request, he learned that a gear wheel located at one corner of said crane was warped; that he then told appellee that in his opinion this warped gear wheel caused the lurch or jar which appellee reported to him; that he promised appellee he would procure a new gear wheel as soon as he could get one cast and cut out; that he promised appellee to procure nothing other than such new gear wheel; that appellee was induced to remain at work by reason of said promise of said Matheny. Appellant contends that these findings are in conflict with the allegations of the complaint "that the said uneven movement of the said crane, and the jerking action thereof, was caused by the said cogs on the said pinion, and on said cogwheel, and the said boxing and bear-

ings being worn and out of repair, which plaintiff alleges was the cause thereof. * * * That said foreman, having superior knowledge in the premises, said to plaintiff that there was no great danger in operating it (the crane), and then and there promised to repair the said defective and worn condition in the said cogs, pinions, boxings and bearings within a reasonable time thereafter." We are unable to see the force of appellant's contention. It is apparent from a reading of the complaint as a whole that the "gear wheel" was one of the "cogwheels" or "pinions" referred to in that pleading and it cannot be seriously contended that because, in repairing the defective and worn condition in said crane, it was unnecessary to procure more than one new part, the special findings of the jury to that effect are in conflict with the general promise to make such repairs. The one is inclusive of the other. Nor is the finding, that in the opinion of Matheny the lurch or jar was caused by the warped gear, in conflict with a general allegation that such movement was a result of the defective and worn condition of the cogs, pinions, boxing, etc. At most it was but the finding of an opinion which was to be considered with the other evidence in the case as to the actual cause of the injury. We are also unable to agree with appellant's contention that Matheny's promise to replace the warped gear wheel "as soon as he got time to get one cast and cut out" is in conflict with the averment of a promise to repair within a reasonable time, or that either of such promises was conditional. Appellee had the right to rely on such a promise and, in the absence of contributory negligence on his part, he was entitled to recover if injured by reason of the alleged defects within the period covered by said promise. The duration of that period was a question of fact to be determined by the jury.

The interrogatories in this case, of which there are 250, were submitted by appellant and nearly all of them are so

framed as to require an answer of either "yes" or "no". Many of them, particularly those to which our attention is now called, are so adroitly stated as to compel the affirmance or denial in a limited sense of certain material allegations of the complaint. But a consideration of the interrogatories and the answers thereto as a whole convinces us that they are not in irreconcilable conflict with the general verdict, and there was no error in overruling appellant's motion for judgment on such answers.

Appellant also assigns error in the overruling of its motion for a new trial and insists that as the verdict of the jury can be sustained under the evidence introduced only 7. by building one inference on another, it must be set aside and a new trial granted. Appellant states the rule of causation in negligence cases to be that "the plaintiff must show by the evidence, that the relation of cause and effect exists between the alleged defects in the machinery, and the injury complained of. The mere fact that there may be a defect in a piece of machinery at the time of the injury, will not warrant the conclusion that this defect was necessarily the cause of the servant's injury." This rule may be conceded but we cannot agree that it is applicable here. Appellant takes the position (1) that the only defect in the crane, which is shown by the evidence, was the warped gear wheel, and (2) that it was clearly shown that such defect had nothing to do with the accident. Without passing on this last proposition, which, however, is not conceded, a review of the evidence as set out in appellant's brief is sufficient to show that the first contention is not well founded. There was evidence not only that the gear wheel was warped but also that its teeth were worn sharp; that the teeth of the pinion gear with which it meshed were also worn sharp, thus permitting a lost motion or "play" in the gears; that certain boxings and bearings on the driving shaft of the crane were worn; that when the

crane was operated these defects caused the wheels at one end thereof to bind on the rails of the track over which they ran; that this binding caused the flanges of the wheels to climb up onto the rails and suddenly drop back, thus producing a lurch or jar of the entire machine. Appellant did introduce testimony to the effect that such a jar might have been produced by other causes, such as the starting or stopping of the crane in a sudden manner, by running over a nut or bolt on the track, or by the operation of other machines near the crane in question, but there is a failure of evidence to show that any one of such causes existed at the time of the accident. While the evidence on several material elements of this case is in sharp conflict, there is evidence from which the jury was justified in finding two facts: (1) that the defects in the crane which were charged and proven would cause said crane to lurch, and (2) that appellee was thrown to his injury by reason of such a lurch. With these two facts established and with an entire failure of proof that any other of the known causes for such a movement on the part of the crane was then present, we cannot say that the jury was unwarranted in drawing the inference that the defective condition of the crane produced the lurch and caused appellee's injury as charged.

Appellant earnestly contends that it is a physical impossibility for the defects alleged to have existed in said crane, to produce such a movement in a machine of its weight as would throw a person from his seat thereon, especially when he was seated nearly sixty feet from the place where the defect existed. There was some evidence, however, to the effect that the weight of the crane caused the truck wheel to drop back onto the rail more suddenly and with a greater jar than would be true of a lighter machine; also that the work which appellee was doing at the time of his injury, that of sanding the rails over which the crane was operated, required him to be in either a kneeling or leaning position at the extreme end of

the machine; that while such position was comparatively safe under ordinary conditions, the unusual movement of the crane caused appellee suddenly to lose his balance and fall. The physical possibility and the actual occurrence of a condition such as appellee described and sought to establish are matters first to be determined by the jury and, on appeal, unless the facts clearly disclose a natural impossibility, the rule contended for by appellant should not be invoked. We are unable to say in this case that such a condition is disclosed.

Our conclusions above stated serve also to dispose of some of the objections raised by appellant as to the instructions given and refused, and in such instances repetition here is unnecessary. Further objection is urged, however, against instruction No. 2 given by the court of its own motion on the ground that it does not properly define the phrase "preponderance of the evidence." It reads as follows: "By preponderance of the evidence is meant that evidence which after a consideration of all the evidence is, in the judgment of the jurors, entitled to the greatest weight. It means such evidence as when weighed with that which is offered to oppose it has more convincing power in the minds of the jury. It is not a technical term at all, but simply means, that evidence which outweighs that which is offered to oppose it. It does not mean that the greater number of witnesses shall be produced on the one side or on the other, but that upon the whole evidence the jury believes the greater probability of the truth to be upon the side of the party having the affirmative of the issue." We are unable to agree with appellant's contention that this instruction singles out "some particular evidence that has been most striking to the mind."

Instruction No. 29 given by the court is as follows: "If you find under the evidence and the rules of law I have given you that the plaintiff is entitled to recover, it will be your duty to assess the amount of damages

which in your judgment he should recover. In assessing this amount, *every particular and phase of the injury may enter into the consideration of the jury in estimating his damages,* * * * [certain proper elements of damage are then set out] * * *; *and the jury should give the plaintiff such a sum as will compensate him for the injuries received, taking into consideration all of the facts proved in the case."* In the case of *Sanitary Can Co.* v. *McKinney* (1913), 52 Ind. App. 379, 100 N. E. 785, it was held error to instruct the jury that in assessing the amount of damages "every particular and phase of the injury may enter into consideration in estimating such damages". In that case also and in several others to which our attention is called, including *Monongahela River, etc., Co.* v. *Hardsaw* (1907), 169 Ind. 147, 81 N. E. 492; *City of Delphi* v. *Lowery* (1881), 74 Ind. 520, 39 Am. Rep. 98; and *Mesker* v. *Leonard* (1911), 48 Ind. App. 642, 96 N. E. 485, instructions have been held erroneous which, in effect, told the jury that in assessing damages it might "take into consideration all the facts proved in the case." Whenever the record shows that improper evidence has been admitted over the objection of the defendant, which might tend to influence the jury in its award of damages or that there is evidence properly admitted as to other issues which might have such an effect, an instruction containing statements such as those above set out will be considered harmful. But where no such condition is disclosed, the giving of an instruction such as the one before us, if error, will be deemed harmless. Appellant contends that the record before us shows the admission of improper evidence but it also shows that proper steps were not taken to present any question as to such items of evidence. We cannot hold that the giving of instruction No. 29 constituted reversible error.

It is unnecessary to extend this opinion by setting out the other instructions challenged by appellant. We do not construe them to be hypothetical instructions purporting to

cover all the issues of the case and such omissions as occur in them are supplied in other instructions given.

Appellant's motion for a new trial also presents the alleged misconduct of appellee's counsel in asking the jurors, on the *voir dire* examination, the following question:

11. "Q. There is just one other question I want to ask. I will ask it to the jury generally; Are any of you gentlemen stockholders or officers or agents or in anywise connected with the Travellers Insurance Company, *the casualty company that is making part of the defense in this case?*" Appellant's counsel objected to this question for the reason that "it is improper and tending to prejudice the jury against the defendant in this case; inquiring upon a matter that cannot be at issue in this case, in any sense." This objection was overruled, as was appellant's motion to set aside the submission of the cause to the jury, and the question was answered in the negative by each of the jurors. Thereupon the judge withdrew to his private chambers and upon request, counsel for appellant and appellee attended and there interrogated one Mr. E. S. Kisselberg who testified that "for the year covered by this accident the company had a policy of insurance for the protection of the Inland. The company has employed Mr. Whinery (counsel for appellant) in this case." Appellant's counsel has clearly outlined the proposition which we have to consider in these words: "If the question in the case at bar had gone no further (than to ask the jurors if they were in anywise connected with the Travellers Insurance Company), we would not contend that error was committed, but when counsel makes the statement at the latter portion of the question of a fact, he is communicating prejudicial information to the jury, and commits reversible error."

There is a decided variety of opinion among the courts of the several states as to the right of counsel for the plaintiff in a personal injury action to suggest in any way in the presence of the jury that an indemnity insurance com-

pany is an actual party in interest, and it is extremely difficult to lay down a fixed rule which will apply on all occasions. An employer of labor has as much right to insure himself against loss by accident to one of his servants or employes as he has to insure against a loss by fire or by water. It is but the exercise of prudence to provide against such adverse contingency and the employer who has taken such prudent precaution is not to be mulcted on that account. The fact that he is so insured, or indemnified, and is defended, in whole or in part, by counsel chosen by the insurer, cannot lawfully affect the determination of the issues in suit. Following this line of reasoning, some courts have held that it is reversible error to advise the jury in any way, even on the *voir dire* examination, that the defendant is indemnified against an adverse result of the action at issue. *Iverson* v. *McDonnell* (1904), 36 Wash. 73, 78 Pac. 202; *Odell* v. *Genesee Construction Co.* (1911), 145 App. Div. 125, 129 N. Y. Supp. 122; *Lowsit* v. *Seattle Lumber Co.* (1905), 38 Wash. 290, 80 Pac. 431; *Stratton* v. *Nichols Lumber Co.* (1905), 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881; *Eckhart, etc., Milling Co.* v. *Shaefer* (1902), 101 Ill. App. 500; *Lassig* v. *Barsky* (1904), 87 N. Y. Supp. 425; *Cosselmon* v. *Dunfee* (1902), 172 N. Y. 507, 65 N. E. 494; *Harry Bros. Co.* v. *Brady* (1905), — Tex. Civ. App. —, 86 S. W. 615; *Hoyt* v. *J. E. Davis Mfg. Co.* (1906), 112 App. Div. 755, 98 N. Y. Supp. 1031; *Lipschutz* v. *Ross* (1903), 84 N. Y. Supp. 632. On the other hand, as is said in *Viou* v. *Brooks-Scanlon Lumber Co.* (1906), 99 Minn. 97, 105, 108 N. W. 891, 9 Ann. Cas. 318, other decisions "reveal a definite recession from the original position that the connection of an indemnity insurance company is entirely collateral to the issues in an action to recover for personal injuries, * * * and that it would be prejudicial and reversible error to cause the interest of the insurance company to appear in course of the trial." The decisions thus referred to, although recognizing that an employer who

carries indemnity is as much entitled to a fair and impartial trial as the employer who does not, are also cognizant of the fact that stockholders, officers, and employes of a casualty company which has insured a defendant against liability for personal injuries are not competent jurors in an action to recover for such injuries; also that counsel are entitled to be advised as to such facts as will enable them to exercise the right of peremptory challenge in an intelligent manner. On these grounds it has been held that counsel may not only question jurors about their possible interest in a particular indemnity company, or in companies of that character, but, as a basis for such question, may show also that the defendant is insured in the given company. *Heydman* v. *Red Wing Brick Co.* (1910), 112 Minn. 158, 163, 127 N. W. 561; *Girard* v. *Grosvenordale Co.* (1909), 82 Conn. 271, 279, 73 Atl. 747; *Granrus* v. *Croxton Mining Co.* (1907), 102 Minn. 325, 328, 113 N. W. 693; *Faber* v. *C. Reiss Coal Co.* (1905), 124 Wis. 554, 561, 102 N. W. 1049; *Foley* v. *Cudahy Packing Co.* (1903), 119 Iowa 246, 251, 93 N. W. 284; *Citizens Light, etc., Co.* v. *Lee* (1913), 180 Ala. —, 62 South. 199; *Meyer* v. *Gundlach-Nelson Mfg. Co.* (1896), 67 Mo. App. 389; *Spoonick* v. *Backus-Brooks Co.* (1903), 89 Minn. 354, 94 N. W. 1079. In the Spoonick case, *supra,* at page 358, the Supreme Court of Minnesota uses this language: ''The question squarely raised by the record is whether, upon the preliminary examination of a juror, the fact that the defendant is indemnified by an accident insurance company may be disclosed, directly or indirectly, and the juror interrogated as to his connection with or interest in such company, in order that the court may determine whether he can act as a juror impartially, and without prejudice to the substantial rights of one of the parties.'' This question was answered in the affirmative, the court holding that such should be the rule ''where there is nothing to indicate that there was a lack of good faith on the part of counsel, when bringing to the attention

of the court, for the purpose of properly selecting the jury, the fact that another party, not named as defendant, was specially interested in the result of the case.''

In the case of *Citizens Light, etc., Co.* v. *Lee, supra,* the plaintiff, during the selection of the jury, filed a written motion asking that the court qualify the jurors as to their connection, if any, with a certain casualty, company, on the ground that said company was a real party in interest. Before allowing proof of the motion the court said to counsel for defendant: ''It is only for the purpose of qualifying the jury, and if you gentlemen will agree that the jury may be qualified without going into the testimony, it need not be taken.'' Defendant answered: ''We are not going to agree to it at all'', whereupon the plaintiff was allowed to prove that the indemnity company had executed an insurance contract with the defendant and the jurors were interrogated as to their relation with said company. The proof of the motion was made in the presence of the jury but it was held that no error had been committed.

In the Faber case, *supra,* although the objection to the plaintiff's question was sustained and the jury instructed not to consider the arguments thereon made in their presence, yet such rulings were made after an extended colloquy between the trial judge and counsel for both parties, and on appeal it was contended that such remarks were so prejudicial in character that the subsequent efforts to withdraw them could not cure the error. The Wisconsin Supreme Court declined to so hold and at page 563 said, ''The line of demarcation between prejudicial and nonprejudicial remarks of this character cannot be readily drawn. Each case depends largely upon the circumstances by which they are elicited, and their probable effect upon the jurors.''

This exact situation, in which actual connection between the defendant and an indemnity company has been shown, does not seem to have been passed on in this State but in the case of *M. O'Connor & Co.* v. *Gillaspy* (1908), 170 Ind.

428, 83 N. E. 738, this court held that it was not error to permit counsel for plaintiff to ask each juror on his *voir dire* examination as to his connection with a given insurance company, or with any insurance company engaged in the business of insuring against accidents. It is therein said that ''Parties litigant in cases of this class are entitled to a trial by a thoroughly impartial jury, and have a right to make such preliminary inquiries of the jurors as may seem reasonably necessary to show their impartiality and disinterestedness. In the exercise of this right counsel must be allowed some latitude, to be regulated in the sound discretion of the trial court, according to the nature and attendant circumstances of each particular case.'' The same rule is expressed in the case of *Goff* v. *Kokomo Brass Works* (1909), 43 Ind. App. 643, 88 N. E. 312.

Under the decision in the Gillaspy case, *supra,* it is clear that there was not error in permitting appellee's counsel to interrogate the jurors as to their possible connection with the Travellers Insurance Company, but the gratuitous suggestion by counsel that such company was ''making part of the defense in this case'' was unnecessary to preserve his rights and tended· to prejudice appellant's position.

After the jurors had each answered the question in the negative, appellant moved that the jury be admonished not to consider the fact of insurance. This motion was overruled, as was appellant's request that the jury be instructed in the matter. These rulings cannot be justified. In whatever manner the fact of insurance was shown or suggested, appellant was entitled to have the jury cautioned and instructed that such fact had no bearing on the merits of the case. Had the record clearly disclosed that appellant was not harmed by the question as propounded, the fact that it was asked might not, alone, be reversible error, but in view of the vigorous and insistent charge that the amount of the verdict is excessive and the refusal of the court properly to instruct the jury as to

such question, we are unable to say that such a showing has been made, and a new trial should have been granted.

Judgment reversed, with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 104 N. E. 76. As to assumption of 'risk by servant, see 131 Am. St. 437. On the question of the servant's assumption of risk in continuing work on master's promise to remove a specific cause of danger, see 40 L. R. A. 781. As to the effect of promise where danger is great and imminent, see 29 L. R. A. (N. S.) 597. For a discussion of a servant's assumption of risk as affected by the master's promise to repair, see 4 Ann. Cas. 153; 9 Ann. Cas. 1011; Ann. Cas. 1913 C 505. See, also, under (1) 26 Cyc. 1386; (2) 26 Cyc. 1209; (3) 26 Cyc. 1398, 1399; (4) 26 Cyc. 1579; (6) 26 Cyc. 1211; (7) 26 Cyc. 1442; (8) 26 Cyc. 1460; (9) 38 Cyc. 1675, 1750; (10) 38 Cyc. 1809; (11) 24 Cyc. 342; (12) 38 Cyc. 1703.