JACKSON, RECEIVER, v. ATWOOD, ADMINISTRATRIX.

[No. 23,927.   Filed June 29, 1923.   Rehearing denied December 21, 1923.]

1. MASTER AND SERVANT.—*Federal Safety Appliance Act.—Complaint.—Sufficiency.—Statute.*—A complaint alleging that defendant's servants failed to couple the power brakes with the locomotive pulling an interstate train so as to enable the engineer to set the brakes in an emergency, and that such negligence was the proximate cause of injuries to a fireman on said train, killed in a derailment thereof, is sufficient to charge a violation of Federal Safety Appliance Act (§8605 U. S. Compiled Statutes 1918).   p. 62.

2. MASTER AND SERVANT.—*Federal Safety Appliance Act.—Evidence.—Sufficiency.*—Evidence *held* to show that failure to connect the power brakes with the locomotive pulling an interstate train was the proximate cause of such engine being turned over after derailment so as to crush the fireman underneath it, and was a violation of the Federal Safety Appliance Act.   p. 63.

3. MASTER AND SERVANT.—*Federal Safety Appliance Act.—Assumption of Risk.—Statute.*—Under §4 of the Federal Employers' Liability Act (§8660 U. S. Comp. St. 1918), assumption of risk is no defense to an action for the death of a fireman caused by failure to connect the power brakes with the locomotive pulling an interstate train in violation of Federal Safety Appliance Act (§8605 U. S. Comp. St. 1918).   p. 65.

4. MASTER AND SERVANT.— *Assumption of Risk.— Notice of Danger.*—Evidence *held* sufficient to justify the jury in inferring that a locomotive fireman, crushed when his engine turned over after being derailed by reason of low joints caused by rotten ties under the track, had no notice, actual or constructive, of the condition of the track, and that he could not have known, in the exercise of ordinary care, of such defective condition, where several section-hands testified that they had gone over the track daily looking for low joints and found none.   p. 65.

5. PLEADING.— *Negligence.— Assumption of Risk.— Omission Cured by Evidence.*—A complaint for damages for the death of a railroad fireman, who was crushed to death by the overturning of his engine after being derailed by reason of low joints and rotten ties under the track, is defective if it does not negative his assumption of the risk arising from the defective track, but this defect in the complaint could be cured by the evidence.   p. 67.

6. MASTER AND SERVANT.—*Instructions.*—*Assumption of Risk.*— *Inconsistency.*—In an action against a railroad company for the death of a locomotive fireman, the complaint charging both common-law negligence in operating a train over a defective track and a violation of the Federal Safety Appliance Act, instructions on the two phases of the action, one that if he went upon the engine and continued thereon knowing of the dangerous condition of the track, he assumed the risk of injury from said condition, and the other that if he was injured by reason of failure to connect the engine and cars with air brakes, in violation of the federal statute, the question of assumed risk could not be considered, are not inconsistent or misleading. p. 67.

7. TRIAL.—*Instruction.*—*Measure of Damages.*—*Death of Plaintiff's Decedent.*—In an action for damages for the death of plaintiff's decedent, an instruction as to the measure of damages authorizing the jury to take into consideration the decedent's earnings at the time of his death and whether or not he applied such earnings to the support of his family, also his character, his habits for industry and sobriety, and, "from all the facts and circumstances", determine what plaintiff's recovery should be, was not erroneous where there was no evidence of facts and circumstances which might have influenced the jury in estimating the damages. p. 69.

8. APPEAL.— *Review.*— *Instruction.*— *Measure of Damages.*— In an action for damages for the death of plaintiff's decedent, an instruction as to the matters to be considered in determining plaintiff's damages, which enumerated various items that might be considered, and then added: "from all the facts and circumstances say what the measure of the recovery should be", will be construed to mean the facts and circumstances stated in the instruction, and will be presumed to be correct unless it affirmatively appears that facts were admitted in evidence which probably misled the jury in awarding damages. p. 71.

9. APPEAL.— *Review.*— *Action for Wrongful Death.*— *Suffering of Decedent.*—*Instruction.*—In an action for wrongful death of plaintiff's decedent, an instruction that the jury, in determining the measure of damages, might consider "all the facts and circumstances in evidence" was not erroneous on the theory that it led the jury to consider evidence of the conscious suffering of the decedent after the injury which caused his death where the court gave a positive instruction that it should not consider such suffering. p. 72.

10. APPEAL.— *Review.*— *Bill of Exceptions.*— *After Ruling on Motion for New Trial.*—When time is granted, on overruling a motion for a new trial, for tendering a bill of exceptions, such

order authorizes a bill which presents matters necessary to a review of the court's ruling in passing on the reasons assigned for a new trial and nothing more, and matters not assigned as a cause for new trial will not be considered even though included in such bill of exceptions.   p. 72.

11.   TRIAL.—*Misconduct of Counsel.—Objection.—When Made.— Saving Exception.*—Misconduct of counsel must be objected to, before the jury retires, and the action of the court should be invoked by a proper motion to remedy the situation; if it is thought that the error cannot be fully corrected by instructions and admonitions of the court, a motion should be made for an order setting aside the submission and discharging the jury, the party objecting preserving in the record by a bill of exceptions the ruling of the court thereon, and assigning such action of the court as a cause for trial, the court not being required to do any more than it is requested to do.   p. 72

12.   APPEAL.—*Review.—Excessive Damages.—Appellant's Brief.* —Whether the damages awarded plaintiff were excessive will not be considered where none of the evidence as to damages is set out in appellant's brief, and no authorities are cited or reasons presented in support of such contention.   p. 74.

13.   DAMAGES.—*Death of Locomotive Fireman.*—Twenty-five thousand dollars *held* not excessive damages for the death of a locomotive fireman, 45 years old, earning $75 every two weeks, and contributing all of it to the support of his family. p. 74.

From Warrick Circuit Court; *Marshal R. Tweedy,* Judge.

Action by Laura V. Atwood, administratrix, against William J. Jackson, receiver of the Chicago and Eastern Illinois Railroad Company.   From a judgment for plaintiff, the defendant appeals.   *Affirmed.*

*John E. Iglehart, Edwin Taylor* and *Kiper & Fulling,* for appellant.

*R. W. Armstrong, O. W. McGinnis* and *Jones & Lairy,* for appellee.

WILLOUGHBY, C. J.—Edward Atwood, while acting as a locomotive fireman, was killed by the derailment of his engine in the city of Evansville, Indiana, on December 8, 1917.   Laura V. Atwood, his widow, was appointed

administratrix, and as such administratrix, brought suit against the appellant, in which suit, she recovered a judgment of $25,000, damages for the death of her said husband. A motion for a new trial was overruled and an appeal taken. The errors relied upon for reversal are, overruling the demurrer to the complaint and overruling the motion for a new trial.

The complaint, omitting the formal parts thereof, alleges, in substance, that at the time of the injury complained of, the defendant, as receiver, was in charge of and operating a certain line of steam railroad known as the Chicago and Eastern Illinois Railroad, extending from Evansville, Indiana, to Chicago, Illinois. That the decedent, Edward Atwood, was on December 8, 1917, in the employ of said receiver as a locomotive fireman. That on said date of December 8, 1917, said William J. Jackson, receiver as aforesaid, and his officers, agents and servants in charge of the management and operation of said railroad, each and all carelessly and negligently suffered and permitted the main track of said railroad to become obstructed at the point where said track crosses Division and Rowley streets in the city of Evansville, County of Vanderburgh, State of Indiana, and for a distance of 300 feet on each side of said crossing, to become and remain in a dangerous and unsafe condition and to have a great number of old, rotten and defective cross-ties under the rails of said track, which cross-ties were insufficient to support and maintain said track in a firm and safe position while trains were passing thereon and while trains and engines were crossing or passing on the same, and each and all of said officers, agents and servants carelessly and negligently suffered and permitted the rail joints at said places to become so loose that rails at said joints would go down under the weight of a locomotive engine, causing the same to sway from side to side in pass-

ing over and along said track, and cause said locomotive to leave the rails and become wrecked. That said officers, agents and servants suffered and permitted the rails of said track at said place to become and remain obstructed with snow and frozen mud, ice, and other obstructions to such an extent that an engine in passing over and along said rails would thereby be derailed and thrown from the track and wrecked. Plaintiff says further that on December 8, 1917, said William J. Jackson, as such receiver, and said officers, agents and servants in charge of the management and operation of said railroad, each and all well knowing each of the foregoing facts and well knowing said railroad as aforesaid, carelessly and negligently ordered and directed said decedent to work as a locomotive fireman on an engine used at the time the injuries herein complained of were sustained, on said railroad, for the purpose of pulling a certain passenger train, then and there being operated by said receiver over said track, from the city of Evansville, Indiana, to the city of Chicago, Illinois. That said receiver ordered and directed said decedent to conform to the orders and directions of said officers, agents and servants in charge of the operation and management of said railroad as aforesaid. That said receiver had attached three locomotive engines to said passenger train and said decedent was ordered to act as fireman on the front one of said locomotives pulling said passenger train and was so acting at the time he received the injuries complained of. That said receiver, officers, agents and servants in charge of the operation and management of said railroad each and all carelessly and negligently failed to couple up the power brakes and train brakes with which the cars and engines in said train were equipped so that the engineer of the front locomotive drawing said train could control

and regulate its speed and so that he could set the power brakes upon the engines and cars behind his said engine in case an emergency should arise requiring said brakes to be applied.    That while said engines and train were passing over said dangerous and defective track, on their way from said city of Evansville, Indiana, to said city of Chicago, Illinois, as aforesaid, by reason of each of the aforesaid acts of negligence on the part of said receiver and on the part of each of said agents, officers and servants, said locomotive upon which said decedent was working as aforesaid, in pulling said train between the two said cities, became derailed and left the track at said place aforesaid and turned over, and in so doing, caught, crushed and mangled said decedent, inflicting grievous injuries upon the person of said decedent, from which he suffered great and excruciating, mental and physical pain and anguish for the space of one hour, during which time he was conscious of his suffering and then died as a result thereof.    Said train on which decedent was working at the said time was being used by said receiver to transport interstate freight and passengers and said decedent was at said time employed in interstate commerce by said receiver. Plaintiff says further that the injuries suffered and the death of her said decedent resulted proximately from each of the aforesaid acts of negligence on the part of said receiver and on the part of his said agents, officers and servants as herein set forth.    That at the time of said injuries and death, said decedent was a strong and able-bodied man, forty-five years of age, with a life expectancy of thirty years, and was earning and was capable of earning the sum of $150 per month, all of which he contributed to the support of his family.    He left surviving him as his sole and only heirs at law this plaintiff, his widow, and his three children, Chester,

Oliver and Vera, aged respectively, thirty-five, nine, eight, and five years, all of whom were dependent upon said decedent for support.

There was a demand for damages in the sum of $50,000. A demurrer was filed to the complaint for want of facts. The demurrer was overruled and appellant excepted. The defendant, Jackson, filed an answer in two paragraphs. First, that the cause of action did not accrue within two years next before the commencement of this action; second, general denial. The reply to the first paragraph of defendant's answer was a general denial. Trial was had on these issues.

Appellant's memorandum filed with the demurrer to the complaint says that the complaint does not state in plain and concise language that the alleged injuries and death of decedent was the direct result of negligence or violation of any duty imposed by the common law or by statute, ordinance, rule, regulation, or direction. That the pretended allegations of the complaint are by way of recital and not by positive averment and are but statements of conclusions. That it is not sufficiently averred that the alleged negligence of the defendant was the proximate cause of said injury and death, nor that this defendant had knowledge and the plaintiff's decedent did not have knowledge of any of the dangers, defects, acts or omissions alleged to have been the cause of decedent's injury and death. This action was brought under the Federal Employers' Liability Act.

The complaint sufficiently charges the violation of a federal statute. See §§8605, 8660 U. S. Comp. Stat. 1918, 27 Stat. at L. 531, ch. 96, §1, 35 Stat. at L. 66, ch. 149, §4. The complaint states facts sufficient to show that, at the time of the injury to appellee's intestate, appellant was violating the Federal Safety Appliance Act, in this, that the locomotive

engine on which appellee's decedent was employed, and which the appellant was using in moving interstate traffic over its line, was not equipped for use with a power-driving wheel brake and appliances for operating the train-brake system, inasmuch as it is alleged that the receiver and the officers, agents and servants in charge of the operation of said train carelessly and negligently failed to couple up the power brakes, with which the cars and locomotives composing the train were equipped, with the locomotive on which appellee's decedent was employed so as to enable the engineer to regulate the speed of the train by setting the power brakes on the engine and cars forming the train back of said locomotive, in case an emergency should arise requiring said brakes to be applied. It also alleges that such negligence was the proximate cause of decedent's injuries and death. The complaint was sufficient to withstand the demurrer filed.

Appellant asserts that the verdict of the jury is not sustained by sufficient evidence and is contrary to law.

2. It appears from the evidence that Edward Atwood was employed as a fireman of a locomotive engine by the receiver of the Chicago and Eastern Illinois Railroad Company, and that, at the time of the injury which caused his death, he was engaged in helping to move a passenger train operating on said railroad in interstate commerce. The locomotive engine on which he was working was derailed in Evansville, and overturned, thus causing his injury and death. There is evidence to the effect that the train ran over a defective and dangerous track with low joints, obstructed by snow and ice and frozen mud, and that there were three engines attached to the train, which was being moved from the Louisville and Nashville station to the Chicago and Eastern Illinois station. The evidence is to the effect that the locomotive on which decedent was

employed was derailed by reason of low joints on the track and obstructions of snow and ice and that by reason of the power brakes on the front locomotive not being connected up with the power brakes of the other locomotives and cars of the train, the engineer of the head locomotive was unable to stop the train in case of emergency requiring it, as he could have done had the brakes been coupled with his locomotive, and that, for this reason, the front locomotive, after it was derailed, was pushed along by the momentum of the train until it was turned away from the track and turned over by the train back of it. It also appears from the evidence that had the power brakes been connected with the front locomotive, the connection would have broken when that locomotive left the track and that this would have set the power brakes on the train, and would have stopped it within ten or fifteen feet and the locomotive on which decedent was working would not have turned over. The evidence shows that the failure to have the power brakes of the train connected with the front locomotive was the proximate cause of that engine being turned over, so as to crush decedent beneath it.

Frank McBryan, a witness for defendant railway, testified that a train equipped as this one with air brakes and locomotive engine and appliances could have been stopped in ten or fifteen feet. That he saw the accident and that the engine on which Atwood was killed was pushed probably sixty feet. The head engine should have been connected with the air as that is the proper way to control the engine and is the customary way.

Another witness testified that when the air is connected up between the engine and train, in case of emergency, the head engine can stop the train quickly. If the train is broken, the breaking of the air hose sets the brakes automatically and stops the train at once.

Another witness testified that if the front engine had been connected with the air, the train would have stopped as soon as the first engine left the track and did not think it would have turned over.

Another witness testified that if the air had been connected with the rest of the train, the train would have stopped immediately when the air become disconnected or broken and would have stopped within ten or fifteen feet.

The appellant contends that the evidence shows that decedent knew of, or had ample opportunity to know of, the hazards and dangers of the work in which he was engaged when he lost his life. That, with such knowledge, he assumed the risks incident thereto.

Section 4, of ch. 149, Act April 22, 1908, 35 Stat. at L. 66, *supra,* being an act relating to liability of common carriers by railroads to their employees in certain cases, provides, "That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

The allegations of the complaint are direct and positive as to the violation of the Federal statute, and in such case there is no assumption of risk by de-

3. cedent. *Boldt, Admx., of Boldt* v. *Pennsylvania R. Co.* (1917), 245 U. S. 441.

So far as regards the defective condition of the track as alleged in the complaint and proven by the evidence, there was evidence which justified the jury

4. in drawing the inference that appellee's de-

cedent had no notice, actual or constructive, of the defective condition of the track and could not, in the exercise of ordinary care, have known of the risks and dangers incident thereto. So far as the snow and ice and frozen mud on the track is concerned, it could have been seen by decedent and he could know of it, but there was evidence which justified the jury in drawing the inference that appellee's decedent had no notice of the defective condition of the track as to low joints and rotten ties. There was evidence to the effect that a section foreman went over the track each day for the purpose of observing the track and that he saw no low joints although it was his business to look for low joints. Another section-hand went over the track daily and did not see the low joints and said he did not think there were any. Another section-hand whose business it was to look for low joints went over the same and saw none. If persons whose duty it was to look for defects in the track, as charged in the complaint and as shown by the evidence to exist, did not find any defects, such evidence was sufficient to justify the jury in drawing the inference that appellee's decedent had no notice, actual or constructive, of the defective condition of the track, and that he could not have known of such defective condition, in the exercise of ordinary care.

It clearly appears from the evidence that the receiver at the time appellee's decedent received his fatal injury was operating a train in interstate commerce composed of five cars and three locomotives, and that all of said cars and locomotives were equipped with power-brakes and were capable of having said power-brakes connected up continuously with the front locomotive so as to enable the engineer thereof to control the movement of the train. It also appears that the train was operated without the power brakes being connected up with the front locomotive or with the one immediately in the

rear of it, by reason of which, the engineer of the front locomotive was unable to control the movement of the train and to stop the train after the front locomotive left the track and before it was turned over. It also appears that appellee's decedent was employed by the receiver as a fireman on the front locomotive, and that his injury and death resulted from the locomotive being turned over by reason of thè negligence of the receiver in the operation of said train in violation of the Federal Safety Appliance Act. The violation of a federal statute was sufficiently charged and proven.

It is claimed by appellee that the judgment should be upheld on both the charge of the violation of the federal statute and the allegations as to common-law negligence; and that, on either view of the complaint, there is no reversible error. It is conceded that the complaint is defective, if regarded as based on common-law negligence alone, for the reason that it does not allege facts sufficient to show that appellee's decedent did not assume the risk of damages arising from the defective condition of the track but this defect in the complaint is cured by the evidence. *Jackson, Rec.,* v. *Rutledge* (1919), 188 Ind. 415; *Prudential Ins. Co.* v. *Ritchey* (1918), 188 Ind. 157; *Pittsburgh, etc., R. Co.* v. *Home Ins. Co.* (1915), 183 Ind. 355, Ann. Cas. 1918A 828; *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258; *Noble* v. *Davison* (1911), 177 Ind. 19; *Euler* v. *Euler* (1913), 55 Ind. App. 547.

Appellant contends that instruction No. 22 given at the request of appellant and No. 5 given at the request of appellee are inconsistent and misleading but does not point out such inconsistency. Said instruction No. 22 is as follows: "If you find from the evidence that the plaintiff's decedent went upon the engine of the defendant, knowing that the track over which the said engine was to run was dangerous by

reason of being covered with snow and ice to the extent that it made the running of said engine upon said track dangerous to the life and person of said decedent, as set out in the complaint, and with full knowledge thereof said decedent continued upon the engine, when he might have safely left the same, but voluntarily continued to remain upon said engine in the operation thereof with the knowledge of said risk, then the court instructs you that the decedent assumed such risk incident to his going upon and remaining upon said engine at the time his injury occurred, resulting solely from such risk of ice and snow, and if you so find from a preponderance of the evidence, the plaintiff cannot recover for the injury so caused by such risk." This instruction is given with reference to the allegation of negligence in permitting the track of defendant's railroad to become and remain unsafe.

Said instruction No. 5 was given as bearing upon the negligence of defendant if the train was operated in a negligent manner in violation of a federal statute. It is as follows: "I instruct you that if you find from the evidence that the defendant on the 8th day of December, 1917, was engaged in the business of interstate commerce, and operating a line of steam railroad, extending from the city of Evansville, Indiana, to the city of Chicago, Illinois, as a common carrier of freight and passengers for hire, and that on said day the defendant carelessly and negligently failed to properly connect its engine and cars with proper air brake connection, so that the engineer pulling said train could properly apply the air and properly control the movement of said train, and that while so operating said train in said negligent manner and in violation of the Federal Statute, the plaintiff was injured as alleged in his complaint by reason of said violation of said statute then I instruct you that the question of contributory negligence and the

question of assumed risk are not to be considered in the cause."

We find nothing inconsistent or misleading in these instructions. They were given upon separate and distinct allegations of negligence in the complaint and were within the issues presented by the pleadings.

Appellant claims that the damages assessed are excessive and that instruction No. 5 given by the court of its own motion was erroneous. Said instruction 7. is as follows: "In the event that you should find from a preponderance of the evidence that the plaintiff is entitled to recover, then you should assess her damage in such a sum as would compensate her for the injury herein sustained, and in arriving at this amount you have a right to take into consideration the amount of money the decedent was earning at the time of his death, and whether or not he applied that money to the support of his family, his character, his habits for industry and sobriety, and from all the facts and circumstances say what the measure of the recovery herein should be; not, however, to exceed the sum of $50,000.00 the amount named in the complaint." Appellant claims that the closing clause of that instruction constitutes reversible error. We do not so view it. The court undoubtedly intended to say that the jury should determine the amount of recovery from a consideration of "all the facts and circumstances (stated)." There can be little doubt that the jury so understood the instruction, and that the damages were determined from a consideration of the elements of damage to which the court referred in the former part of the instruction. It will be observed that the language used directs the jury to consider all the facts and circumstances (presumably referring to those previously stated). It does not tell the jury to consider all the *other* facts and circumstances in evidence. Expressions of this kind

which have been criticized or condemned when contained in instructions on the measure of damages are generally so worded as to require a consideration of facts and circumstances in evidence other than those stated in the instruction. Instructions directing the jury to consider "all the other facts and circumstances in evidence to fix the amount of recovery" are more objectionable in form than the one given in this case; but expressions of that kind do not render an instruction on the subject of damages erroneous *per se*. It may be erroneous or it may not be erroneous depending on the other evidence in the case. *City of Delphi* v. *Lowery, Admx.* (1881), 74 Ind. 520, 39 Am. Rep. 98; *Kingan & Co.* v. *Gleason* (1913), 55 Ind. App. 684; *Haskell, etc., Car Co.* v. *Trzop* (1920), 190 Ind. 35, 128 N. E. 401.

In *Kingan & Co.* v. *Gleason, supra,* the court says: "We think that an instruction directing the jury to consider all the facts and circumstances in the case in estimating the damages to be awarded would be understood to mean that they should consider all the facts and circumstances bearing upon the question of damages, unless the evidence discloses some exceptional facts or circumstances which would probably mislead the jury in estimating the damages. In each of the cases cited, wherein the giving of a similar instruction was held to be reversible error, there was evidence as to facts and circumstances which, from their nature, might have influenced the jury improperly in estimating the damages. These facts and circumstances are, in each case, carefully pointed out by the court, and their injurious tendency is emphasized as having an important influence on the conclusion reached. We have examined the record in this case and we find no evidence of any fact or circumstance which would have a tendency to induce the jury to increase the amount of dam-

ages, through passion, prejudice, undue pity, or from which it might have been led to impose punitive damages. In view of the evidence in this case, we can not think that the form of this instruction had any effect. upon the amount of damages awarded."

Where facts are allowed to go in evidence which furnish an incorrect basis for the assessment of damages, an instruction which directs the jury to determine the amount of recovery from all the facts will be deemed erroneous and prejudicial. *City of Delphi* v. *Lowery, Admx., supra.* But where no such condition appears from evidence, the instruction cannot be regarded as erroneous. *Inland Steel Co.* v. *Gillespie* (1914), 181 Ind. 633, 644. In the absence of such a showing by the record, every presumption is indulged in favor of the correctness of the instruction. *Vandalia Coal Co.* v. *Yemm* (1910), 175 Ind. 524, 540.

A ruling of the court which is clearly erroneous is presumed to be harmful, in the absence of something in the record showing such ruling to be harmless;

8. but this rule cannot apply to an instruction such as the one under consideration, for the reason that this court cannot hold the instruction to be erroneous unless the evidence discloses such facts as would make it so. Such an instruction is presumed to be correct under the evidence, unless it affirmatively appears that facts were admitted in evidence which probably misled the jury in awarding damages. *Vandalia Coal Co.* v. *Yemm, supra; Kingan & Co.* v. *Gleason, supra.*

In every opinion in which such an instruction has been held to be reversible error, the court has pointed out evidence or circumstances proved of an exceptional nature which might have led the jury into giving punitive damages, or might have otherwise affected the question of damages. *Haskell, etc., Car Co.* v. *Trzop, supra; Kingan & Co.* v. *Gleason, supra.*

Appellant fails to point out anything in the record which shows that any evidence was admitted or that any circumstances occurred which improperly influenced the jury in awarding damages.

Appellant attempts to show that the jury was led to consider conscious suffering by appellee's decedent after the injury and before his death in awarding damages in this case; but the record wholly fails to sustain his position on this point. Appellant does not claim that there is anything else in the record to show that the instruction was erroneous or harmful. At the request of the appellant, the court gave to the jury the following instructions: "Instruction No. 25. The complaint, among other things charges that after plaintiff's decedent was caught, crushed and mangled, as set out in the complaint, he suffered great and excruciating, mental and physical pain and anguish and lingered for a space of one hour, during which time he was conscious of his said suffering, and then died as a result thereof. The court instructs you that you cannot assess damages against the defendant in this action on account of such suffering of said decedent."

In view of the instruction set out, this court cannot assume that the jury disregarded the admonition therein contained, and that it awarded damages for conscious suffering endured by appellee's decedent in the face of a positive instruction by the court to the contrary.

Appellant complains of something said by appellee's attorney in his opening statement to the jury, but no question as to the propriety of such statement is saved by the record. It does not appear that any objection was made at any time to the propriety of such statement, or that the court ruled thereon or that any exceptions were reserved. When the trial court overruled a motion for a new trial it passed on all questions presented by the reasons assigned for a

new trial; and when exceptions are taken and time is allowed within which to tender a bill of exceptions, the order so made authorizes a bill of exceptions to be tendered within the time which presents the ruling made by the court in passing on the reasons assigned for a new trial and nothing more. Misconduct of counsel was not assigned as a cause for a new trial. §656 Burns 1914, §626 R. S. 1881; *Bement* v. *May* (1893), 135 Ind. 664, 674. If counsel representing appellant at the trial believed that any statement of counsel in the presence of the jury, or any other act or conduct during the trial, had so far affected and influenced the minds of the jurors composing the panel as to prevent the jury from rendering a fair and impartial verdict in the case on trial, that question should have been presented to the court before the jury retired to deliberate on its verdict, and the action of the court should have been invoked by a proper motion to remedy the situation. If it was thought that the situation could not be set right by instructions and admonitions from the court, a motion should have been made for an order setting aside the submission and discharging the jury. If such steps had been taken, an adverse ruling on such motion could have been saved by a proper bill of exceptions, assigned as cause for a new trial, and finally presented to this court on appeal for review. This was not done. Appellant was content to ask an instruction to correct the situation and to take a chance on the verdict of the jury. The court took the only action that was requested and gave the instruction at the request of appellant; and, as appellant asked the court to do nothing further, it will be assumed that he was content with the court's action. The court committed no error. *Ramseyer, Exr.,* v. *Dennis* (1917), 187 Ind. 420, 440.

Appellant says the damages assessed by the jury are excessive but no authority is cited and no reason pre-

sented to show that the damages awarded are in 12, 13. fact excessive as shown by the evidence and no part of the evidence relating to the elements of damage is set out in the brief. However, an examination of the record discloses evidence that at the time of his death decedent was forty-five years old and in good health. That he was an industrious and sober man. That he was earning $75 every two weeks and contributed all of it to the support of his family. That he was always at home with his wife and children except when engaged in his work. That his life expectancy under the American Experience Mortality Tables was twenty-four and 54/100 years. Under this evidence, we cannot say the damages are excessive.

We have examined all the questions presented in appellant's brief and find no reversible error in the record. Judgment affirmed.

Townsend, J., absent.