## BRAMAN v. WILEY.

No. 7444.

Circuit Court of Appeals, Seventh Circuit.
May 5, 1941.

Rehearing Denied June 10, 1941.

992

Floyd O. Jellison and Max Buntman, both of South Bend, Ind., for appellant.

Milton A. Johnson and L. M. Hammerschmidt, both of South Bend, Ind., for appellee.

Before ·EVANS and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a judgment entered March 28, 1940, upon a jury verdict, in a suit to recover damages occasioned by the alleged negligence of the defendant in driving his automobile. The errors now urged for reversal have to do with the court's charge to the jury, rulings on evidence, refusal to withdraw the cause from the jury for alleged misconduct on the part of plaintiff's counsel, and the court's questioning on the voir dire examination of the jury.

The complaint alleged that the plaintiff was driving south on United States Highway No. 31 at a point about three and one-half or four miles north of the City of Rochester, Indiana, and that at the same time and place the defendant was driving north on said highway. The negligence, as alleged, was to the effect that the defendant was driving on the wrong side of the highway and, as a result, the cars driven by the plaintiff and the defendant collided. By answer, the defendant denied negligence

and charged that the collision and resultant damages were occasioned by contributory negligence on the part of the plaintiff.

Plaintiff, driver of the car, was accompanied by two other persons. Defendant was driving his car alone. Just prior to the collision, defendant had passed another car, and the driver of this car, the defendant, plaintiff, and the persons riding with him were the only eyewitnesses to the collision. Much of the testimony has to do with the position of the automobile shortly after the collision. Much of the argument is predicated upon such testimony, each side contending that it supports the respective contentions as to the circumstances of the collision.

Inasmuch as the questions raised are legal, there is no occasion to further detail the facts. In our view the only question of consequence arises from defendant's contention that the jury was prejudiced by reason of the alleged inferences and intimations that he was indemnified by insurance. The complaint in this respect is twofold: (1) that the court and plaintiff's counsel asked improper questions on the voir dire examination of the jury, and (2) that plaintiff's counsel, in argument to the jury, made improper statements.

Prior to the voir dire examination, the court overruled defendant's motion, suggesting that any juror's connection or affiliation with any insurance company be ascertained by first asking if the juror had any affiliation or connection with any corporation, firm or association. Upon receiving an affirmative answer, it was proposed that the juror be asked the name of the company, corporation or association, and the character of its business. If it was then disclosed that the business be that of insurance, that the name of the company and his connection or affiliation therewith be ascertained. It is contended that the denial of this motion was prejudicial error. Some authorities are cited which suggest the desirability of the practice suggested by this motion, but we know of no authority where its denial has been held erroneous. Certainly, as we shall shortly point out, there is no such rule of law or practice in Indiana.

The court then proceeded to interrogate each of the prospective jurors as to whether or not they had automobile insurance and, if so, the name of the particular company. It is contended this was highly improper and was a plain intimation to the jury that the defendant was indemnified. While the rule in Indiana is, as in most jurisdictions, that evidence of the defendant's insurance constitutes reversible error, it is not the rule that a plaintiff is precluded, during the voir dire examination, from ascertaining the information complained of in the instant case. In fact, in Goff v. Kokomo Brass Works, 43 Ind. App. 642, 88 N.E. 312, the case was reversed for the reason that the trial court refused plaintiff the right to inquire of the jurors as to their interest in, and relationship to, the defendant's indemnifying insurance company. The Supreme Court in Gerlot et al. v. Swartz et al., 212 Ind. 292, 304, 7 N.E.2d 960, held that a similar question was not reversible error. The appellate courts of that State have frequently recognized that the examination of jurors on their voir dire is largely in the discretion of the trial court and limited only by the good faith of the lawyer propounding the question. Martin v. Lilly, 188 Ind. 139, 121 N.E. 443; Beyer v. Safron, 84 Ind.App. 512, 515, 151 N.E. 620; Fort Wayne Checker Cab Co. v. Davis, 90 Ind.App. 30, 165 N.E. 764, 765, 168 N.E. 41. It is also pointed out that when it was ascertained that one of the jurors wrote automobile insurance, plaintiff's counsel, in excusing this juror, stated: "I believe we had better excuse Mr. Miller; he is an insurance company and kind of lined up with the company in order to take statements." There was no excuse for the making of such statement, but we do not believe that its import is as serious as claimed by the defendant.

There are a number of statements contained in counsel's argument to the jury, which it is contended inject the insurance issue and demonstrate counsel's lack of good faith. One of such statements occurred when counsel was discussing the defendant and, in part, is as follows: "* * * I am not criticizing you Bob, I want to say I do not think he is a bad fellow, and I want to say another thing, if you men of the Jury think Harvey Braman should recover and you bring in a substantial reasonable judgment in this case, and you see Bob Wiley next week, Bob Wiley will say, I think you did just exactly right, I am glad to see you give the money, yes, that is what Bob Wiley will say about this thing after it is all over. * * *"

Another statement—"the evidence is undisputed that he had been stout as a bull,

if it was not your investigators would have found it." In referring to defendant's counsel, this statement was made: "So, Mr. Johnson, in looking over this case, after he gets it to put up his defense for his principal, for the person that hired him, he has a notice right away that he has got to get this scene down around that hill and get it back. * * *"

It will be observed that no direct mention was made of insurance and we do not believe it can reasonably be inferred from such statements that the defendant was indemnified. We have read all of the argument and, taken as a whole, we doubt if it is either enlightening or prejudicial.

Furthermore, no objection was made to the argument, and no question raised until after the jury had been instructed and retired. Defendant then moved to withdraw the submission on the ground of the alleged improper inference contained in the argument of plaintiff's counsel. It was pointed out by the court that he did not think the argument was susceptible of such construction, but that if defendant's counsel thought otherwise, he would recall the jury and give an instruction on this point. Counsel did not avail himself of such offer. We are of the opinion that the trial court was in a better position to evaluate the situation than we, and as pointed out in the Indiana authorities cited heretofore, his discretion should not be disturbed unless clearly abused. We can not say it was abused in the instant situation.

In addition to the cases cited, the Appellate Court of Indiana in Coats v. Strawmeyer, 107 Ind.App. 102, 21 N.E.2d 433, 435, considered an alleged improper statement made by counsel in argument similar to, but more damaging than, those here complained of, and while the court severely criticized counsel in the matter, held that it did not require a reversal of the judgment. It therefore appears, from a reading of the Indiana cases, that no reversible error was committed with respect to the manner in which the jury was interrogated, or in the argument made by plaintiff's counsel.

There was some evidence to the effect that the defendant was under the influence of intoxicating liquor. It is claimed the court erred in refusing to permit a witness to testify as to a conversation had with the defendant shortly after the accident. The purpose of this conversation, so it is claimed, was to negative the proof with reference to the defendant's intoxication. The witness was not asked to express an opinion, however, as to whether the defendant was intoxicated, and we do not believe the conversation was material for the purpose stated. It is also claimed the court should have permitted the same witness to relate a conversation had with one Keller, who was a witness for the plaintiff and an occupant of plaintiff's automobile at the time of the collision. Its purpose was to impeach Keller who had testified he was unconscious following the accident. It appears no ground had been laid for impeachment, but at any rate, we do not believe defendant was harmed by the court's ruling.

Error is also assigned to the admission of testimony as to the purpose of a yellow line in the center of the highway over a hill, for the reason that there was no basis in the pleading for such testimony. We do not believe this evidence was inadmissible for the reason assigned. After the admission of such testimony, however, it developed, without dispute, that at the time of the collision in question, there was no yellow line at or near the scene of the accident, but that it was placed there later. Even though the testimony was improperly admitted, it is difficult to see how defendant could have been harmed in view of the subsequent disclosure.

Complaint is also made of an instruction which permitted the jury to consider permanent damages and the court's refusal to instruct that the question of permanency was not involved. There was evidence to the effect that the plaintiff suffered a severe head injury which necessitated the removal of a portion of the skull bone; that there was a scar which extended from the frontal region of his head to his left ear, and that one-third of the ear was cut off. He also had a scar four inches in length over his left shoulder. Plaintiff testified that he was nervous, suffered dizzy spells and headaches; that he had lost twenty-five pounds in weight and that he was able to work only part time. A physician who had treated him testified, in effect, that plaintiff's dizziness and nervous condition might be permanent. We are of the opinion there was no error in the charge in this respect. The record discloses substantial amounts expended by the plaintiff on account of medical, nurse and hospital services. When these are considered in connection with the nature of plain-

tiff's injuries, the amount awarded, $2750, would indicate that little, if anything, was allowed on account of permanent injuries. At any rate, the amount can not be said to be excessive, nor does it indicate that the verdict was the result of prejudice.

The facts presented a typical jury problem and we are of the view that no error was committed which requires a reversal.

The judgment is affirmed.