## RUST ET AL. *v.* WATSON.

[No. 20,149. Filed March 17, 1966. Rehearing denied June 27, 1966. Transfer denied May 16, 1967.]

 

*Jerdie D. Lewis, Jordan D. Lewis,* and *Lewis and Lewis,* of counsel, all of Terre Haute, for appellants.

*Mann, Mann, Chaney, Johnson & Hicks* and *Hansford C. Mann,* both of Terre Haute, for appellee.

HUNTER, J.—This is an appeal from the Superior Court, Number Two in Vigo County wherein a jury rendered a judgment in favor of the appellee for Twenty-Four Thousand ($24,000) Dollars as a result of injuries received when a chandelier fell in a building owned by appellants. The appellants filed a motion for new trial which was overruled by the lower court. The appellants assert that the lower court erred in its ruling on the motion for a new trial which specified the following errors:

 I The lower court erred in overruling the appellants' demurrer.

 II The lower court erred in giving certain of the instructions to the jury, and conversely, in refusing to give certain instructions of the appellants to the jury.

 III Numerous portions of the voir dire examination of the prospective jurors were continued over the objections of the appellants. This along with the actions of the lower court injected the element of insurance into the trial in such a manner so as to prejudice the jury as evidenced by a grossly excessive verdict.

 IV The verdict was grossly excessive.

We will discuss these points in the order presented above.

## I

The appellants contend that the lower court erred in overruling the demurrer to the appellee-plaintiff's complaint on

the grounds that the complaint did not state facts sufficient to constitute a cause of action. The complaint, after alleging that the building and fixtures were in the sole possession, care and control of the defendant, and that the chandelier fell from the ceiling of said building causing various injuries to the appellee, stated as follows:

> "5. That the injuries heretofore set forth were the proximate result of the defendants' failure to provide a safe place for their paying guests, including plaintiff, all of which building and fixtures were in the possession, care and control of said defendants, Zorah Temple Realty Company and Zorah Temple of the Ancient Arabic Order of the Nobles of Mystic Shrine continuonsly and without interruption since said building was completed in the year 1926."

The appellants contend that the above is not sufficient to state a cause of action because there is no general allegation or specific allegation of negligence. The appellants also state that inasmuch as they made a motion to make the complaint more specific, the facts in the complaint must be taken without the benefit of conclusions and inferences.

We agree with the appellants that the appellee had to plead either general or specific negligence before the use of the evidentiary principle of *res ipsa loquitur* would be allowed. Ths court stated in *Wass* v. *Suter* (1949), 119 Ind. App. 655, 84 N. E. 2d 734, at p. 661:

> ". . .There is some conflict among the authorities as to whether pleading a specific act of negligence waives the pleader's right to rely upon this doctrine. Many jurisdictions hold that if a case is a proper one for the application of the doctrine, the plaintiff, by pleading specific acts of negligence, does not lose his right to rely on this doctrine provided a general allegation of negligence is made. (cases cited) Indiana has adopted this view."

However, we do not agree that the appellee failed to aver general negligence in her complaint. The appellants seem to

say that since the appellee merely averred that the injuries complained of were proximately caused by "the defendants' failure to provide a safe place" without the use of the word "negligence," the complaint fails to state a cause of action. Certainly, the appellants were not misled by this phraseology. As in their motion to make more specific the appellants merely stated that they wanted the appellee to aver specific negligence, which was properly overruled by the lower court.

We cannot find any case law to support the appellants' contention that the failure to state the word "negligence" will render a complaint, as the one in the case at bar, insufficient to state a cause of action, nor do the appellants support their contention by any case law. § 2-1004, Burns' 1946 Replacement states:

"The first pleading on the part of the plaintiff is the complaint. The complaint shall contain: . . .

Second. A statement of the facts constituting the cause of action, in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended . . ."

We think it can be clearly understood that the appellee was attempting to state a general allegation of negligence, and the appellants' motion and demurrer readily exemplify that they understood the appellee's complaint to allege general negligence.

In addition § 2-1013, Burns' 1946 Replacement states:

"The judgment upon overruling a demurrer shall be that the party shall plead over; and the answer or reply shall not be deemed to overrule the objection taken by demurrer. But no objection taken by demurrer, and overruled, shall be sufficient to reverse the judgment, if it appears from the whole record that the merits of the cause have been fairly determined. If a party fails to plead after the demurrer is overruled, judgment shall be rendered against him as upon a default."

This court feels that the merits were fairly tried in the court below. Consequently, we affirm the lower court's ruling on the demurrer.

## II

The appellants also contend that the lower court erred in presenting, modifying, and excluding certain instructions to the jury.

The appellants state the court erred in submitting to the jury over the objections of the appellants its Instruction No. 1. The instruction was:

> "Ladies and gentlemen of the Jury, if you find by a preponderance of the evidence that plaintiff was an invited guest of the defendants at the Shrine Temple in Terre Haute, Indiana, on the 15th day of April, 1961, on that event the defendants impliedly held out to plaintiff that except for unknown defects in said building not discoverable by the exercise of reasonable and ordinary care on the part of defendants, that said place of entertainment of said building was a safe place.
>
> You are instructed that if you find by a preponderance of the evidence that plaintiff was an invited guest in the Shrine Temple on April 15, 1961, and during the time plaintiff was in said building as such guest, being without fault, she was injured by a chandelier which fell from the ceiling at said place of entertainment and was injured thereby, and you further find by a preponderance of the, evidence that defendant in the exercise of reasonable and ordinary care under the circumstances existing at said time and place, could and should have prevented the falling of said chandelier and avoided injury to plaintiff, and that said failure of defendant to exercise reasonable or ordinary care was the proximate cause of injury of plaintiff, then I instruct you that you should find for plaintiff."

The appellants assert that this instruction does not require prior knowledge, actual or constructive, of defects or their probability before the duty of inspection was incumbent on the appellants.

Although this court does not feel that it is a model instruction, we find that it is a sufficient statement of the law involved. The appellee was attempting to recover on the theory of negligence. The instruction stated that in order for the jury to return a verdict for the plaintiff-appellee, first they must find by a preponderance of the evidence the following: (a) that the appellants had a duty to exercise reasonable care to provide a safe place for the plaintiff-appellee, (b) that the appellants failed to exercise the degree of care which a reasonably prudent person would have under like or similar circumstances thereby breaching said duty, and (c) that such breach of duty was the proximate cause of the injury to the appellee. It is uncontroverted that these are the elements of negligence. In *Budkiewicz* v. *Elgin, Joliet and Eastern Ry. Co.* (1958), 238 Ind. 535, 540, 150 N. E. 2d 897, our Supreme Court stated:

"Actionable negligence has three essential elements: (1) a duty imposed by law to do or not to do a certain act; (2) a violation of that duty by an act or omission to act which constitutes a breach of that duty; and (3) injury proximately caused by such breach of duty." See also *Neal, Admr.* v. *Home Builders, Inc.* (1953), 232 Ind. 160, 111 N. E. 2d 280; *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740; *Indiana, etc., Coal Co.* v. *Neal* (1906), 166 Ind. 458, 77 N. E. 850; *Faris* v. *Hoberg et al.* (1893), 134 Ind. 269, 33 N. E. 1028.

Consequently, we believe this mandatory instruction stated all the elements necessary to a recovery on the theory of negligence. The duty to inspect is a further clarification of the standard of reasonable care under special circumstances. We know of no rule that requires a specific statement on the duty to inspect to be included in a mandatory instruction on negligence.

The remainng objections to this instruction and the objections to the appellee's Instructions Nos. 1 and 10, which were given by the lower court have been waived. Supreme Court Rule 2-17 provides:

"Rule 2-17. Appellant's Brief. The brief of appellant shall contain short and clear statements disclosing: . . . (e) After each assignment of error relied upon—except the ruling on a motion for a new trial—and after each cause for a new trial relied upon, there shall be concisely stated the basis of the objection to the ruling complained of, exhibiting clearly the points of fact and of law being presented, and how they are applicable, citing the authorities and statutes relied upon, and setting out verbatim the relevant parts of such statutes as are deemed to have an important bearing. . . (f) Appellant's original brief shall be indexed. Errors assigned and causes for a new trial not treated as herein directed, shall be deemed to be waived."

The appellants have failed to cite any case law which supports their contentions of alleged error in said instructions; therefore, such objections are waived under Rule 2-17 (f), *supra. Wright* v. *State* (1958), 237 Ind. 593, 147 N. E. 2d 551; *Terrey et al.* v. *Brinckman et al.* (1963), 135 Ind. App. 479, 194 N. E. 2d 760; *Southern Indiana Gas & Elec Co.* v. *Bone* (1962), 135 Ind. App. 531, 180 N. E. 2d 375; *Collier* v. *Baum* (1962), 133 Ind. App. 127, 180 N. E. 2d 554.

The appellants also assert that the lower court erred in its refusal of their tendered Instructions Nos. 21, 24, 28, 31 and 34. Instruction No. 21 stated:

"A man cannot be held responsible on the theory of negligence for an injury from an act or omission on his part unless it appears that he had knowledge or reasonably was charged with knowledge that the act or omission involved danger to another."

This matter was fully covered in appellants' Instruction No. 26, which states:

"I instruct you that a person cannot be held responsible on the theory of negligence for an injury from an act or omission to inspect unless it appears from a preponderance of the evidence that he had actual or constructive knowledge or reasonably was charged with actual or constructive knowledge that the act or omission involved danger to another."

Appellants' Instruction No. 24, also refused, stated:

"While a person is required to anticipate or foresee or guard against what usually happens or is likely to happen, it does not require him to anticipate or foresee and provide against that which is not usual and not likely to happen and it does not require him to anticipate or foresee and provide against that which is not usual and not likely to happen, or, in other words, that which is only remotely and slightly probable. The general test in such cases is not whether the injurious result or consequence was possible, but whether it was probable; that is likely to occur according to the usual experience of persons. A person cannot be held responsible for a consequence which is merely probable according to occasional experience, but only as a result or consequence which is probable according to the ordinary and usual experience of mankind."

This matter was fully covered by the following instructions:

Appellants' Instruction No. 16
"You are instructed under the laws of the State of Indiana, in determining whether an act or omission is or is not negligent, the question must depend upon whether or not an injury of some kind to some person could have been reasonably expected to result from such act or omission; reasonable care requires a person to anticipate and guard against what usually happens or is likely to happen, and that a failure to do this is negligence; . . ."

Appellants' Instruction No. 18
"You are instructed that foreseeability is an essential element of proximate cause and that no liability exists for an injury or damage that could not reasonably have been anticipated as the proximate result of one's conduct."

Appellants' Instruction No. 23
"You are further instructed that an essential element of proximate cause is the requirement that the result must be such as might reasonably have been anticipated or foreseen in the ordinary experience of man."

Appellants' Instruction No. 26
"I instruct you that a person cannot be held responsible on the theory of negligence for an injury from an act or omission to inspect unless it appears from a preponderance of the evidence that he had actual or constructive knowledge or reasonably was charged with actual or constructive

knowledge that the act or omission involved danger to another."

The appellants' Instruction No. 28, which was refused, provided:

"You are instructed that the duty to inspect arises from knowledge of possible defects or their reasonable probability.

So, in this case if you find from a preponderance of the evidence that defendants did not have any actual or constructive knowledge of the defective chandelier or its fastenings, or had cause to suspect the chandelier or its fastenings were defective on and before the date of the accident in question, then you are instructed that unless you find from a preponderance of the evidence there was actual or constructive knowledge on the part of defendants, of said defective condition there was no duty on the part of defendants to make an inspection of said chandelier and its fastenings."

This matter was fully covered in the appellants' Instruction No. 26 which was given by the court as quoted above.

Appellants' Instruction No. 31 which was refused by the court stated:

"The rule of res ipsa loquitur does not relieve the plaintiff of the burden of proving by a preponderance of the evidence negligence on the part of the defendants, nor does it raise any presumption in her favor. The plaintiff in this case, Ida May Watson, will not be entitled to a verdict unless she satisfies the jury by the preponderance of the evidence that her injuries were caused by an alleged defect in the chandelier, including its fastenings, attributable to and proximately caused by defendants' negligence."

This matter was fully covered by the appellants' Instruction No. 32 which was given and stated:

"In these instructions I have used the word 'res ipsa loquitur'. Therefore, it is necessary for me to further instruct you concerning the use and their meaning. The rule res ipsa loquitur does not imply that the mere happening of the accident either raises the presumption of negligence against the defendants, or shifts the burden of proof from the

plaintiff. The application of the rule referred to simply means that the occurrence with its accompanying circumstances may be such as to warrant the inference that it was the result of negligence, but such an inference is subject to rebuttal by other evidence."

We are of the opinion that the lower court's refusal to give all of the appellants' instructions as noted immediately hereinabove does not constitute reversible error. It is axiomatic that the trial court is not required to instruct the jury on any specific rule of law more than once. *Robbins, Exr.* v. *Fugit* (1920), 189 Ind. 165, 126 N. E. 321; *Vandalia Coal Co.* v. *Yemm* (1910), 175 Ind. 524, 92 N. E. 49; *Farm Bureau Mutual Ins. Co.* v. *Seal, Admr.* (1962), 134 Ind. App. 269, 179 N. E. 2d 760; *Kempf* v. *Himsel* (1951), 121 Ind. App. 488, 98 N. E. 2d 200.

Appellants' Instruction No. 34 which was refused provided:

"I instruct you that the laws of the State of Indiana recognize the possibility of a mere accident, that is, an occurrence which is in no way due to the fault or negligence of anyone.

The happening of a mere accident, resulting in injury cannot support a verdict for damages. Therefore, if you find that the injury or damage suffered by the plaintiff, Ida May Watson, were the result of a mere accident, then there can be no recovery by the plaintiff and it will be your duty to return a verdict for the defendants, Paul Rust, E. E. Buckingham and George Martin, as Trustees of Zorah Temple of the Ancient Arabic Order of the Nobles of Mystic Shrine and Zorah Temple Realty Company."

This matter was fully discussed in appellants' Instruction No. 27 which was given and reads as follows:

"You are instructed that an unavoidable accident has been defined to be an occurrence or happening as under all the attendant circumstances and conditions could not have been foreseen or prevented by using ordinary care. So, in this case, if you find by a preponderance of the evidence that the involved accident was one that could not have been foreseen or prevented by either plaintiff or defendant, in

the exercise of ordinary care, then I instruct you that this was an unavoidable accident, and plaintiff cannot recover."

It should be noted that Instruction No. 34 tendered by the appellant and refused by the court appears to be a standard instruction on the "mere accident" theory. Similar instructions had been upheld by this court and the Supreme Court prior to the cases of *Miller* v. *Alvey* (1965), 246 Ind. 560, 207 N. E. 2d 633 and *White* v. *Evansville American Legion Home Ass'n.* (1965), 247 Ind. 69, 210 N. E. 2d 845. In view of the latter two decisions, it appears to this court that the appellants' Instruction No. 27 concerning the proposition of "unavoidable accident" which was given by the court is *at least as much or more* than the appellants were entitled to under the broad theory of "accident instructions." Therefore, we hold that the refusal to give the appellants' Instruction No. 34 could in no way be construed to be reversibe error.

### III

The appellants contend that during the voir dire examination of the prospective jurors a comment by the judge, newspaper articles, questions by the counsel of the appellee, and instructions by the judge imputed to the jury the fact that the appellants were insured; that this presumed knowledge was prejudicial to the appellants' cause of action and prevented the appellants from receiving a fair trial; and that the verdict was grossly excessive by reason thereof.

As to the remark alleged to have been made by the judge, the appellants contend that during the voir dire examination "after an adjournment and before the court reporter had returned," the court made a remark to the appellants' counsel in the presence of the prospective jury which implied that the appellants carried insurance. The appellants present this question by an affidavit in the motion for a new trial. They also contend that the veracity of this document must be pre-

sumed since there were no counter affidavits filed. In support of their contentions the appellants cite Supreme Court Rule 1-15 which states:

"When a motion for new trial is supported by affidavits, . . . Such affidavits shall be considered as evidence without the introduction thereof on the hearing on the motion, and shall be a part of the record without a bill of exceptions . . ."

However, the cases interpreting Rule 1-15, *supra,* do not support the appellants' reasoning. In *Dull* v. *State* (1962), 242 Ind. 633, 180 N. E. 2d 523, our Supreme Court stated at p. 638:

"The alleged misconduct is presented by affidavits signed and sworn to by the appellant and made a part of the motion for a new trial. They are not presented to this court by any bill of exceptions. Rule 1-15 of this court provides for affidavits being filed with motions for a new trial, but this court has limited the use of such affidavits in cases where it is not possible to obtain a bill of exceptions for that purpose. The use of the affidavits is primarily for the purpose of proving facts that took place outside the presence of the court." See also *McCoy* v. *State* (1960), 241 Ind. 104, 170 N. E. 2d 43 and *Nix* v. *State* (1960), 240 Ind. 392, 166 N. E. 2d 326.

Since the matter which the appellants are attempting to place before this court occurred within the knowledge of the lower court, the proper method to present it to this court is by a bill of exceptions rather than by affidavit.

In the appellants' motion to dismiss the panel, they also allude to two newspaper articles which referred to the American States Insurance Company as the defendant. If the appellants thought these newspaper articles might have prejudiced the jurors, they could have raised this question during the voir dire examination. If prejudice was demonstrated by their responses, they could have moved for disqualification for cause. Therefore, we are of the opinion

that appellants' allegations of error in this instance are not well taken.

As to the questions by the counsel for the appellee and the instructions by the court which the appellants contend erroneously imputed the existence of insurance to the prospective jurors on the voir dire examination, the appellants specifically raise the following occurrences:

(a) "Are you acquainted with Mr. W. H. Grosbach, the adjuster for the American States Insurance Company?" This question was repeated may times throughout the voir dire examination by the counsel for the plaintiff-appellee.

(b) At one point during the voir dire a high officer in the Shrine was brought before the prespective jurors. In the course of asking the jurors as to their acquaintance with the man, the question was asked "And it wouldn't affect your thinking if he wanted this claim paid or if he wanted it denied?"

(c) During the course of questioning a prospective juror who was an officer of an insurance agency the plaintiff's counsel challenged the prospective juror for cause due to the fact that the agency sold insurance for American States Insurance Company which insured the defendant. The defendant's counsel stated that he could not see any reason for cause. In the discourse that followed the court stated "There isn't any question about that. *However, the plaintiff is still entitled to have an unbiased jury and there are certain rules in relation to that;* and if some other person is financially interested in it, I would say that they would have a right to interrogate as to that. If you say now that they don't have insurance with that company, why—but I assumed they did, or you would have objected the first time he asked him if he had any stock in this company."

(d) At another point during the voir dire examination after the plaintiff had asked the question under (a) above and the defendant's objections were overruled, the defendant asked the court to instruct the jury that insurance was not an issue in the case. The court stated in this regard "COURT: You want me to instruct them it's improper when I just got through sustaining it? *I will admonish the jury that this case*

*is a case between the plaintiff and the Shrine.* The only reason these questions are asked is because it has been shown to the Court that the insurance Company has a financial interest and anybody connected with them they have a right to interrogate, *in order to determine whether or not they are acceptable as jurors.*"

(e) The plaintiffs' counsel also asked this question of a prospective juror "Mrs. Fick, if it should develop in this case that the American States Insurance Company is interested in the outcome of the case, would that have a tendency to make you feel that you were on the same team as they were—the fact that you hold a policy in that company—and gravitate to their side of the case?"

(f) Another question objected to was "Mrs. Mock, would you have any tendency to feel that you had common cause with the American States Insurance Company?"

(g) In another discourse between the defendant's counsel and the court the following was stated "MR. LEWIS: Judge, before the jury is sworn to try this cause, Defendants at this time move that the Court instruct the Jury, admonish the Jury that insurance is not an issue in this case, and should not be considered in arriving at a verdict. And that is the motion of the Defendants at this time. COURT: I had it in mind to say: *This is a case between the plaintiff and the defendants as named.* The only reason there's ever been any questions relative to the insurance was on account of the fact that it was shown that they had a monetary interest in this case and therefore, *quite a number of the jurors seemed to be associated with that interest to a certain extent—on that account— to let Plaintiff determine who was free and unbaised, they were allowed to ask those questions. But so far as the cause of action is concerned, it's between the plaintiff and the defendants.*" (our emphasis)

Consequently, we now turn to a consideration of appellants' allegations of error pertaining to the specific occurrences as set forth above under point III.

In reviewing the case law in the area of improper references to insurance during a trial, we have found two distinct

areas. The first area concerns the admissability of evidence as to defendant's insurance *re* payment of a judgment and remarks made by the defendant's counsel relative thereto during the course of the trial. Generally any such evidence or remarks are inadmissable, but in certain instances such errors may be cured by a court's instruction. *Taggart* v. *Keebler* (1926), 198 Ind. 633, 154 N. E. 485; *Helton* v. *Mann* (1942), 111 Ind. App. 487, 40 N. E. 2d 395. There are exceptions to this general rule, for example where the fact of insurance coverage is relevant to a material issue. See *Snider* v. *Truex* (1943), 222 Ind. 18, 51 N. E. 2d 477; *Van Drake* v. *Thomas* (1942), 110 Ind. App. 586, 38 N. E. 2d 878; *McDonald* v. *Swanson* (1936), 103 Ind. App. 171, 1 N. E. 2d 684. The rationale of these rulings seems to be that only evidence which is pertinent to the issues presented by the case is admissable. The underlying consideration is the presumption that if the jury has cognizance of the fact that the defendant will not bear the incident of the judgment, the jury wil be prejudiced in favor of an excessive verdict. Therefore, it seems that during the trial the defendant has the paramount interest in excluding the fact of insurance, limited only to the extent that it is relevant to an issue in the case.

The second area of the case law provides a major exception to the above principles, to-wit: the voir dire examination of the prospective jurors. This is the subject with which we are concerned in the case at bar.

The first case we find in Indiana is *M. O'Conner & Co.* v. *Gillaspy* (1907), 170 Ind. 428, 83 N. E. 738. Our Supreme Court stated that reasonable inquiries which are necessary to show the impartiality of the prospective jurors may be made as to their financial interests in the outcome of the case. Counsel must be given some latitude within the sound discretion of the trial court. In this area the trial court has the responsibility of determining the good faith of counsel

as related to such inquiries. In the instant case, the counsel inquired of each prospective juror as to his possible connections with casualty insurance companies. The court found no violation. See also *Goff* v. *Kokomo Brass Works* (1909), 43 Ind. App. 642, 88 N. E. 312.

The first case which expressly overruled the discretion of the trial court in this matter was *Inland Steel Co.* v. *Gillespie* (1914), 181 Ind 633, 104 N. E. 76. Counsel, while asking if any of the jurors were interested in or connected with the Travelers Insurance Company, described the company as *"the casualty company that is making part of the defense in this case."* (our emphasis) The counsel for the defendant attempted to correct this by objecting and requesting an instruction that the jury be instructed not to consider the fact of insurance. The objection and motion were overruled. In reversing the trial court, our Supreme Court stated at p. 649:

> "These rulings can not be justified. In whatever manner the fact of insurance was shown or suggested, appellant was entitled to have the jury cautioned and instructed that such fact had no bearing on the merits of the case. Had the record clearly disclosed that appellant was not harmed by the question as propounded, *the fact that it was asked might not, alone, be reversible error, . . ."* (our emphasis)

It should be noted that the court based its ruling on two facts:

(1) that the court refused to instruct the jury to consider only the merits of the case, and (2) the court felt that the *two* errors were prejudicial *as the record disclosed the possibility of an excessive verdict.* This is one of the few cases we find in Indiana where the improper injection of insurance by counsel proceeding beyond the bounds of a good faith examination on the voir dire, resulted in a reversal. However, the court indicated that the mere fact that such questions were asked without being corrected by an instruction, is *not reversible error per se;* but the record must indicate that the appellant was harmed in some manner.

In *Martin* v. *Lilly* (1919), 188 Ind. 139, 121 N. E. 443, counsel for the plaintiff stated during voir dire that he could prove that the defendant was insured and that the policy limits were $5,000. The court found this to be beyond the bounds of the *good faith limitation* and not curable by instructions. However, the Supreme Court also reversed on the error of the trial court on (1) the issue of the doctrine of "respondeat superior" holding that there was insufficient evidence to sustain the application of said doctrine, and (2) an erroneous instruction.

For cases of similar import in which the Indiana courts found no error in the voir dire examination, see *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629; *Silvestro* v. *Walz* (1943), 222 Ind. 163, 51 N. E. 2d 629; *Riechmann* v. *Reasner* (1943), 221 Ind. 628, 51 N. E. 2d 10; *Jones* v. *Cary* (1941), 219 Ind. 268, 37 N. E. 2d 944; *Gerlot* v. *Swartz* (1937), 212 Ind. 292, 7 N. E. 2d 960; *Heinrich* v. *Ellis* (1943), 113 Ind. App. 478, 48 N. E. 2d 96 and *Braman* v. *Willey*, 119 F. 2d 991. (CCA 7th, 1941).

A cogent discussion of the *"good faith inquiry"* principle is found in *King* v. *Ransburg* (1942), 111 Ind. App. 523, 39 N. E. 2d 822. The court states at pp. 533-534:

> "While it is perfectly proper for a party to have one of its insurer's claim agents so assist counsel, nevertheless, when one not of counsel and a stranger to the record actively participates in conduct of the litigation in such manner, opposing counsel is justified in discovering from prospective jurors whether they are acquainted with him. *The extent of the inquiry must of course be limited by the necessity of the situation so created,* . . . (our emphasis)

As exemplified herein at this stage of the proceedings, the plaintiff's interest in an impartial jury is the primary concern. Consequently, counsel should be able to inquire as to any juror's relationship to an insurance company which has a financial interest in the result of the pro-

ceedings. The case law limits this to *"good faith inquiries."* The essence of this limitation is that the particular facts and circumstances of each case will be determinative. In addition, if counsel circumvents this limitation and it is not corrected by an instruction from the court, this does not constitute *reversible error per se,* but it must be shown by the record that such inquiries were clearly prejudicial.

The permissive propriety of such inquiries in voir dire examinations is premised upon the fact that in negligence cases wherein the defendant has insurance that will compensate him for his losses, the insurance contract usually provides a defense clause. Therefore, in most instances, the attorneys for the insurance company are defending the case, they together with the claims adjusters are the investigators and negotiators. It is their decision either to litigate or to settle the claim. Consequently, they are very active in the litigation as well as having a financial interest in the outcome. Any prospective juror connected with such a company could be influenced.

From a realistic viewpoint the named defendant is a party only to the extent his insurance contract requires. This is one of the few instances where, practically speaking, the trier of facts is not allowed to know the identity of a real party in interest. Some jurisdictions feel so strongly about this that they have allowed the insurance carrier to be joined as a party defendant. This was done by the courts in Texas without enabling legislation, whereas in Wisconsin and Louisiana this has been permitted by statute. See. 4 A. L. R. 2d 761, *Annotation,* at pp. 766-767. Indiana has not gone this far.

The justification for limiting the plaintiff in his examination of the jurors to their interests and connections with insurance companies is due to presumed prejudice that probably will be created in the minds of jurors if they realize the defendant is insured. However, certain anomalies are present.

It should be noted that such presumption arose via the case law in the late 19th and early 20th centuries. The continued recognition of such presumed prejudice can be seriously questioned today. Even if the prejudice has not decreased, it can be questioned whether the good faith limitation of such inquiries has any pragmatic effect in concealing from the jury the fact that the defendant is insured. Two considerations are relevant.

First, the jurors in the majority of negligence cases enter the court room with the preconceived idea that the defendant carries insurance. The rationale of this proposition is expounded in *Causey* v. *Cornelius* (1958), 164 Cal. App. 2d 269, 330 P. 2d 468 where the court stated at pp. 472-473:

> "It is time for a reappraisal of this insurance bugaboo . . . This insurance rule, built upon the theory of prejudice against corporations and especially insurance corporations, has largely outlived its purpose and its justification . . .
>
> The only justification for the rule excluding (with limitations) evidence of the existence of insurance is the supposition that jurors will be led into excessive verdicts if they become aware of defendant's insurance coverage. Today this is a naive conceit (sic) . . . insurance . . . has become so common that jurors naturally assume as they enter the jury box that defendant is insured against liability."

In 4 A. L. R. 2d § 19, *Annotation* at p. 817 it is noted relative to the fact of the common knowledge of jurors of insurance coverage in negligence cases:

> ". . . it is probable that a reference by plaintiff's counsel suggesting that defendant is insured is not as prejudicial to the right of a defendant to a fair and impartial trial as heretofore."

Indeed, today it might seem that an entirely different matter should concern the courts in the matter of the concept of the presumption of prejudice and that is if a defendant in a

typical negligence case would be without insurance coverage. Even though the above is referenced to automobile casualty insurance, we do not believe that it is totally inapplicable to the case at bar.

The second consideration relates to the latitude of inquiries allowed to counsel. It has been exemplified that the case law in Indiana goes so far as to permit counsel to inquire into the relationship of a juror to a specific insurance company involved. It is conceivable that more pertinent questions might be premitted where the resultant inferences would be even more evident. See *King* v. *Ransburg, supra.* Certainly via these inquiries the jurors will probably become aware that a defendant is insured.

By reason of the scope of allotted freedom as to the inquiries into a prospective juror's connection with a financially interested insurance company, it is quite evident that the jury will probably acquire the knowledge that the defendant is insured. When this is considered with the fact that the jurors probably have a preconceived idea that the defendant is insured, there can be little doubt remaining that jurors in the great majority of cases know or believe that a defendant is insured.

Therefore, where on appeal, it is contended that questions and comments on the voir dire have injected the element of insurance into the case, we must first consider whether such questions and comments are within the rule of *good faith limitation.* If the questions and comments are outside such limitation then it is this court's duty to determine their prejudicial effect, if any, for the case law of Indiana suggests that their existence does not necessarily constitute reversible error *per se. Inland Steel Co.* v. *Gillespie, supra.* A further discussion seems to be necessitated by the *Inland Steel* case, *supra,* as a result of the questions presented by this appeal. In the case at bar, the appellants contend that the questions propounded on the voir dire (a through g here-

inbefore set forth) concerning the existence of insurance went beyond the bounds of good faith and consequently (1) this apprised the prospective jurors that appellants were insured and such awareness prejudiced the jury as exemplified by what the appellants characterize as a grossly excessive verdict, and (2) that the court's instructions merely compounded and did not correct the error. As to the first point posed above, in regard to the inquiries made by the appellee's counsel which questioned the jurors' acquaintances with "Mr. Grosbach, the adjuster for American States Insurance Company," (see *a, supra*), the appellant states that these were beyond the bounds of the "good faith" limitation. However, all the circumstances surrounding the trial must be considered. This man was present at the dance when the chandelier fell. He was also a high official in the Shrine. He was the local adjuster in the county for American States, the company which carried the insurance involved in this case. He could have been called as a witness. Seemingly, from a review of the record, he was a very well known man in the locality. Certainly any of the prospective jurors who were acquainted with this man in either of his capacities could have been influenced. In viewing the necessity of excluding jurors who might be influenced by their acquaintances with people connected with a case, we cannot say that the questions in this regard were improper.

The remaining questions and instructions (see *b* through *h, supra*), shall be combined for discussion. We do not feel that the points raised can be properly considered out of context. Consequently, we have reviewed the entire voir dire examination. In doing so, we find that the prospective jurors were questioned at many points as to their relationship to American States. They were asked if they owned any stock in American States, and who carried their auto liability insurance. During the questioning of the prospective juror, Morris E. Haehl, Vice President of Allen & Steen, various relationships were discovered. He worked for an agency which

sold insurance for American States. He was acquainted with Mr. Grosbach who had adjusted some of the claims of the agency under the American States policies. In the questioning of another prospecive juror, John W. Dinkle, it was shown that he worked for the Forrest Sherer Agency which sold insurance for American States and also handled some of the Shrine's insurance. He was also acquainted with the defense counsel who had defended many of the agency's claims. In addition, he stated that personally he would be prejudiced due to his connection with the insurance business and claims, etc., to the extent that he would favor a lower verdict. All of the above questions were unobjected to and were proper.

After considering all the points revealed from a reading of the voir dire examination, we find it would defy reason to believe that at this point the jurors did not realize the appellants were insured. This becomes more implausible when it is combined with the fact that jurors in cases such as the one at bar generally have a preconceived idea that the defendant is insured.

Consequently, the jury probably knew of the existence of insurance. They acquired this knowledge by questions phrased during the voir dire examination which were not objected to, which were completely proper, and some which were objected to but were proper. The appellants then would have us reverse the decision due to the court's subsequent references to the insurance company's material interest in the trial for the reason that these comments imputed to the jurors that the appellants were insured when in fact the jurors probably already had properly been made cognizant of this.The appellants do not say that the court or counsel for the appellee attempted to state to the jury that the case was not between the appellee and the appellants, or that the jury in rendering their verdict should consider the fact that the insurance company would pay any damages awarded to the appellee.

We do not agree with the appellants' contentions that the court's instructions compounded the error (*c, d,* and *g, supra*).

Indeed, we hold to the contrary, for the record shows that the court continually admonished the jury that the case was only between the appellants and appellee and that insurance was not to be considered in arriving at a verdict. If there was any doubt in the jurors' minds, this was further clarified by the instructions given to the jury before they retired to decide their verdict, to-wit:

Appellants' tendered Instruction No. 14 reads as follows:

"The Court instructs you that this is a cause of action brought by the plaintiff against the defendants, and that these are the only parties to this cause of action.

You are further instructed that no insurance company is a party in this cause of action, and that no issue of insurance is involved in this cause of action; that the only issues to be tried by you are the issues formed by plaintiff's complaint and the answer of the defendants thereto."

Appellants' tendered Instruction No. 15 reads as follows:

"During the questioning concerning your fitness to serve as jurors each of you has been asked several questions. Attorneys have the right to question jurors on any point, no matter whether related to the case or not on which they desire to seek information relative to your qualifications as jurors. But as jurors you have no right whatever to assume or infer from any questions asked you as jurors that there is any basis in the facts in this case for asking such questions. You are to try this case exactly and upon the issues formed by plaintiff's complaint, defendants' answer thereto. You are to determine solely from the law as stated in these instructions and from the evidence introduced in this case the rights of the parties hereto."

When prospective jurors on the voir dire examination gain knowledge of defendant's insurance coverage through questions not objected to and questions which were proper even though objected to, then there will be no grounds for reversal on appeal merely because there were other questions possibly beyond the good faith limitation and not cured by instruction. For the possible prejudicial error in the latter is rendered harmless by the former. This does not

encompass situations of gross misconduct on the part of counsel or the court which definitely infer to the jury that a defendant will not bear the incident of a verdict and that the jury should consider this fact in their verdict, etc. However, in the case at bar, the questions and instructions are not in this category.

Our Supreme Court stated in *Jones* v. *Cary, supra,* at p. 278:

> "As above stated, the harm claimed by the appellants to have resulted from this remark was that it imparted to the jury the information that the appellants were insured. Later in the trial, evidence was introduced which clearly informed the jury that the appellants were insured. No error predicated on the introduction of such evidence has been assigned. The introduction of such evidence, therefore, rendered harmless any possible error of the court in overruling the motion."

See also *Gamble* v. *Lewis, supra.* Although these cases are not on "all fours" with the facts at bar, in that they are not concerned with errors on the voir dire examination, the holdings are premised on the similar concept of harmless error where the jury is informed of a plaintiff's insurance by questions and comments which were not objected to and/or were proper. Therefore we find no merit in the appellants' contentions as to the questions and instructions.

This court is fully cognizant of the apparent inconsistencies in this area, i. e., when the knowledge of a defendant's insurance is properly brought to the jury, it is not assumed to be prejudicial, but when the same knowledge is brought to the jury via an improper manner, then it is assumed to be prejudicial. In view of the concepts expressed heretofore (a) that many authorities seem to view the presumed prejudice from the injecton of insurance into a trial as non-evident, (b) that the jurors have, in the majority of negligence cases, the preconceived idea that a

defendant is insured, and (c) that counsel is allotted such a wide latitude of inquiry as to a prospective juror's connection with an insurance company which has a financial interest in the verdict, is seems there is no remaining reason for the limitations in regard to the injection of insurance as expressed by the case law with its inherent inconsistencies. These might properly be the concern of the legislature, or of the Supreme Court by Court Rule, permitting a joinder in certain cases of an insurance company as a real party in interest. However, these matters are not within the province of this court.

## IV

The appellants assert under an independent point in their motion for a new trial that the verdict was grossly excessive. In considering this area, our courts have repeatedly held that in order to justify a reversal on these grounds ". . . the amount of damages must be so outrageous as to impress the court at first blush with its enormity. *Louisville, etc., R. Co.* v. *Kemper* (1899), 153 Ind. 618, 53 N. E. 931." See also *Hines, Director* v. *Nichols, Admr.* (1921), 76 Ind. App. 445, 130 N. E. 140; *New York Cent. R. R. Co.* v. *Johnson, Admx., etc.* (1955), 234 Ind. 457, 127 N. E. 2d 603; *Indianapolis Transit, Inc.* v. *Moorman* (1963), 134 Ind. App. 572, 189 N. E. 2d 111.

Upon a review of the evidence most favorable to the award of damages returned by the jury, we are of the opinion that the jury could have directly found or reasonably inferred the existence of the following facts: that immediately prior to said injury, the appellee was in good health and able to carry out the normal activity of a housewife; that the falling chandelier caused various lacerations about her head and right shoulder; that the major laceration on her head was four (4) inches long and cut through to the bone; that she was hospitalized for a week; that the wound on her scalp healed slowly and fine bits of glass worked out to the surface causing in-

fection; that she had severe pain and stiffness in the region of her neck and upper back; that she had headaches that occurred two or three times a week; that she had to return to the hospital for a five (5) day period; that she had scars on her head and shoulder; that she was under the care of different doctors at various times; that from December 7, 1961 through the fall of 1963 she was required to wear a traction device on her neck for certain periods of the day, except for a short period when she was undergoing surgery. There was also evidence that appellee could no longer do heavy housework. There was also medical testimony that the pain in her back and shoulder was permanent, and she could only get relief from it when she would use traction. She had a life expectancy of 36.56 years.

We cannot say that the evidence was not sufficient to justify the verdict or that the jury was motivated by compassion, bias or some other improper element.

We have considered all points of error properly asserted by appellants and find that no reversible error was established, and that the verdict of the jury and judgment of the court should be affirmed.

Judgment affirmed.

Smith, P. J., Bierly and Mote, JJ. concur.

ON PETITION FOR RE-HEARING.

HUNTER, J.—On petiton for re-hearing, the appellants continue to advance the case of *Evansville American Legion etc.* v. *White* (1958), 239 Ind. 138, 154 N. E. 2d 109 in support of ther contentions relative to errors contained in two instructions given by the court below. As we took a different approach in our previous opinion (see 215 N. E. 2d 42), we feel that it might lend some clarity to the previous opinion if these matters are discussed. In said petition, the appellants urge that this court erred in stating that appellants did not need prior knowledge, actual or construc-

tive, of defects in the chandelier before the duty to inspect arose. This interpretation is in error. We merely stated that the mandatory instruction on negligence (the court's Instruction No. 1) did not have to cover the duty to inspect, for such is a further clarification of the duty of ordinary care which was adequately covered in said instruction. The duty to inspect was covered by appellants' Instruction No. 26. *Evansville, supra,* is in no way authority for a holding to the contrary. Said case arose on a question of the sufficiency of the evidence and not a question of a mandatory instruction.

The appellants contend in their petition that this court erred in holding that the appellants' argument, as to the error in the lower court's giving of appellee's Instructions Nos. 1 and 10, was insufficient under Supreme Court Rule 2-17(e) and (f). We feel that such contention has some validity in regard to our previous approach to appellee's Instruction No. 1. However, the result is unchanged. Appellee's Instruction No. 1 is as follows:

> "It is for you, the jury, to determine from a preponderance of the evidence, how, if at all, the exercise of ordinary care would have required the defendants, or either of them, to inspect the winch and cable attached to the chandelier in question. If you find that there was such a duty to inspect, then I instruct you that such duty to inspect cannot be escaped by turning over the care and maintenance of the winch and cable to a club manager, custodian or maintenance man. The act or omission of an employee, acting within the scope of his employment, is, in the eyes of the law, the act of the employer."

The appellants contend that the part of the instruction on the duty to inspect is in error for there was no evidence that appellants had actual or constructive knowledge of any defects in the winch or cable citing *Evansville, supra.* This was further covered in appellants' Instruction No. 26. We would agree with the appellants that in order for the court to so instruct the jury, such evidence would have to be in the record. However, we find that the record does contain evidence that appellants had constructive knowledge of possible defects.

The evidence indicated that the chandelier was placed in the building some thirty-four (34) years prior to the accident.

The chandelier weighed approximately one hundred, and fifty (150) pounds. It was thirty (30) feet above the floor attached by 1/4 inch cable to the winch which was used to lower the chandelier to the floor. This apparatus had been in continual use since placement. The area immediately below the fixture was continually occupied by the public as invitees. In view of the evidence outlined above, we feel that such a period of use would alone constitute constructive notice to the appellants of possible defects.

Indeed it appears the record contained evidence that such a period of time and use in the normal instance calls for continual maintenance procedures which entail intermittent inspections. This alone would differentiate this case from that in *Evansville, supra,* where constructive knowledge of defects did not arise merely due to continued use of a chair. However, a cable and winch used over a period of years in and of itself, would constitute constructive knowledge of possible defects giving rise to a duty to inspect under the circumstances presented in the facts at bar.

The remaining case law put forth by the appellants in relation to this instruction in no way relates to or supports the objections given during the trial nor could the objections relate to this instruction.

The appellants, in their discussion of this instruction, attempt to assert that it was improper to apply *res ipsa loquitur* to this case. However, the instruction referred to had no bearing on *res ipsa loquitur,* nor was such an objection within those stated at the trial.

In their petition the appellants further complain that we failed to consider their objections to the lower court's partial deletion of their Instruction No. 16. As we are forced to write on all points of error placed before us, *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399, we shall

consider this point. The appellants' instruction as tendered is as follows:

"You are instructed under the laws of the State of Indiana, in determining whether an act or omission is or is not negligent, the question must depend upon whether or not an injury of some kind to some person could have been reasonably expected to result from such act or omission; reasonable care requires a person to anticipate and guard against what usually happens or is likely to happen, and that a failure to do this is negligence; but reasonable care does not require him to foresee and guard against that which is not usual and not likely to occur, only to exercise that degree of care which a reasonably and careful person would exercise under the same or like circumstances."

The court deleted the last clause beginning with "but reasonable care." The appellants contend that this deletion was improper as this is a verbatim quote from *Chicago, etc., R. Co.* v. *Dinius* (1908), 170 Ind. 222, 231, 84 N. E. 9. In the first place, said case deals with proximate cause which contains the element of foreseeability. Secondly, the tendered instruction injects reasonable care and confuses such with foreseeability which was not done in the case cited. Consequently, the part of the instruction deleted was not a proper statement of the law involved. In fact, the lower court might properly have deleted more than it did. Thirdly, reasonable care and proximate cause are adequately and further covered by the appellants' Instructions Nos. 6, 7, 18, 23 and 30; and, as we held in our previous opinion, the lower court is not required to instruct a jury on a point of law more than once.

Additionally, the appellants assert in their petition for rehearing that this court erred in holding that the various questions by counsel and the instructions by the judge during the voir dire examination of jurors were not reversible errors, as our holding contravenes the ruling precedents of our Supreme Court in *Martin* v. *Lilly* (1919), 188 Ind. 139, 121 N. E. 443 and *Inland Steel Co.* v. *Gillespie*

(1914), 181 Ind. 633, 104 N. E. 76. We feel it should be pointed out that in regard to *some* of the questions by counsel and the instructions by the judge, we did not hold that they were not in error. However, by the authority of *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629 and *Jones* v. *Cary* (1941), 219 Ind. 268, 37 N. E. 2d 944, we held that any error present in such questions and instructions which might have erroneously imputed to the jury knowledge of the appellants' insurance was rendered harmless as the jury could have acquired such a knowledge through questions which were proper and through the common knowledge of the fact of insurance.

Therefore, there was no reversible error in regard to such questions and instructions.

Petition for re-hearing denied.

NOTE.—Reported in 215 N. E. 2d 42. Rehearing denied reported in 217 N. E. 2d 859.